Chief Judge Fuld.
One of the questions posed by this appeal is whether the defendant, which published articles detailing charges made by the plaintiff’s wife in a matrimonial action, may plead the absolute privilege of fair and true report of a judicial proceeding, under section 74 of the Civil Rights Law, as a defense to libel and to invasion of privacy causes of action. In the spring of 1967, the defendant, News Syndicate Co., Inc., published a series of three articles in its newspapers, the Daily News and the Sunday News, purporting to report a separation suit brought against George W. Shiles, the plaintiff herein, by his wife, Rose Marie Shiles.[1] Prefaced by headlines such as “Wife Says Air Exec Had Harem ” and “Wife Says Exec Built a Harem in the Sky ”, the articles stated, among other things, that Mrs. Shiles had accused her husband of using his position as an airline executive to entice applicants seeking jobs as airline stewardesses to become “ women for his private harem ’ ’ and that the company paid the bills for these women; and that the plaintiff beat her, went out with other women, deserted and failed to support her and that his ‘ ‘ sexual habits ’ ’ were of a “ depraved character.”
Following the publication of these articles, the plaintiff instituted this action for libel and for invasion of privacy. In the libel causes of action, the plaintiff alleges that the articles were false and defamatory and, in his invasion of privacy counts, that the articles were published “ for advertising purposes and for purposes of trade and without [his] consent ”, in violation of sections 50 and 51 of the Civil Rights Law. The complaint further asserts that the defendant’s use of copies of the papers filed in the matrimonial action as a source for its articles was *13 a ‘'violation of the secrecy provisions ’’ of section 235 of the Domestic Relations Law.[2]
In its answer, the defendant not only expressly denied those specific allegations but also pleaded several affirmative defenses to both the libel and the invasion of privacy causes of action. More specifically, in two such defenses (the second and the third), the defendant claimed that the articles constituted ‘ ‘ fair and true reports of judicial proceedings * * * and were and are privileged ” under section 74 of the Civil Rights Law.[3] And, in another affirmative defense (the fourth), the defendant declared that the articles ‘ ‘ are true in substance and in fact.” The plaintiff moved, pursuant to CPLR 3211 (subd. [b]) to strike “ the defense of fair and true report of a judicial proceeding ”, based on the section 74 privilege, and to strike “ the defense of truth ” insofar as such defense pertains to the invasion of privacy causes of action. The court at Special Term denied the motion, the Appellate Division affirmed the resulting *14 order and the appeal is before us by leave of that court on a certified question.
Section 235 of the Domestic Relations Law, which prohibits the taking of copies, or even the inspection, of the records of matrimonial proceedings by any one other than the parties or their counsel, manifests a clear legislative design that those proceedings be kept secret and confidential. Notwithstanding its broad language, we do not believe that section 74 of the Civil Rights Law was ever intended to defeat this design by extending to persons who, despite section 235, were able to obtain such records, the right to publish and disseminate their contents without regard for their truth or falsity or for the harm they may cause to the reputations of the individuals involved.
The reason underlying the privilege of fair and true report of a judicial proceeding is, as we declared some years ago (Lee v. Brooklyn Union Pub. Co., 209 N. Y. 245, 248), “ the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice.” (See, also, Williams v. Williams, 23 N Y 2d 592, 597.) In most types of proceedings the advantage in having judicial proceedings made public ‘ ‘ more than counterbalances the inconveniencies to the private persons whose conduct may be the subject of such proceedings.” (Rex v. Wright, 8 Durn. & E. 293, 298.) On the other hand, however, the Legislature has, at least since 1847 (Gen. Rules of Prac., rule 118; see, also, Rules Civ. Prac., rule 278; Domestic Relations Law, § 235), made it plain that in matrimonial actions the balance of convenience is in favor of the individual and that in the case of papers filed in such actions the public interest is served not by publicizing them but by sealing them and prohibiting their examination by the public.
Since, then, such matrimonial actions were and are not proceedings which the public had the right to hear or see, it follows — and it has been consistently held—that the privilege generally accorded to reports of judicial proceedings is unavailable to reports of matrimonial actions. (See, e.g., Danziger v. Hearst Corp., 304 N. Y. 244, 248; Stevenson v. News Syndicate Co., 276 App. Div. 614, affd. on other grounds, 302 N. Y. 81; see, also, Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 682; Stuart v. Press Pub. Co., 83 App. Div. 467, 478.) The cited cases *15 were founded upon a recognition of the inherently personal nature of matrimonial proceedings and the obvious desirability that records of such proceedings not be ‘'used to gratify private spite or promote public scandal ” (Matter of Caswell, 18 R. I. 835, 836; see Stevenson v. News Syndicate Co., 276 App. Div. 614, 618, supra) and, certainly, not to permit one spouse to force the other into a desired settlement by threatening disclosure and publication of the charges and accusations contained in the pleadings or affidavits filed in the matrimonial action. It is apparent, therefore, that the privilege created by section 74 of the Civil Rights Law does not attach to the publication of a report of matrimonial proceedings.
This does not mean that a party may not publish details of a divorce or separation suit based on files obtained without a court order, or that the courts would interfere with the constitutional right of any one to publish such details, but it does mean that, if he does, he will be held accountable and liable if those details are not truthful. (See Danziger v. Hearst Corp., 304 N. Y. 244, 248-249, supra; see, also, Matter of United/ Press Assns. v. Valente, 308 N. Y. 71, 77.) Thus, in Dansiger, where the defendant had published an illegally obtained affidavit, the court, after declaring that the rule of secrecy does not prohibit publication of the details of a matrimonial action that are obtained from a source other than the files of the court, went on to hold that “ such a publication is actionable if defamatory ” (304 N. Y., at p. 248; emphasis supplied).
As the quoted passage makes clear, the fact, relied upon at Special Term, that the defendant in the present case “ did not inspect the court files but obtained its information from outside sources ”, will not protect the defendant from liability for the consequences resulting from the publication of false and defamatory statements.[4] However, the defendant urges, *16 an amendment to section 337 of the Civil Practice Act—the predecessor of section 74 of the Civil Rights Law-—had the effect of overruling the decision in the Danziger case (304 N. Y. 244, supra). More particularly, the defendant points out that, at the time Danziger was decided, section 337 provided that the privilege applied to reports of ‘ ‘ any judicial, legislative or other public and official proceedings Since, in 1956, the quoted language was amended to read: “ any judicial proceeding, legislative proceeding or other official proceeding ” (L. 1956, ch. 891), the defendant argues that the deletion of the word, ‘'public,’’ was intended to extend the privilege to judicial proceedings which are placed in a legally sealed file and to which it had not previously’ been applied.
The only authoritative indication of the Legislature’s design and purpose when it passed the statute is Governor Harriman’s memorandum of approval when he signed the act amending the law, and it effectively negates the defendant’s construction of the amendment. The Governor had been advised, in memoranda, submitted to him by one or another of the parties opposing the amendment[5], that the bill before him might be interpreted to permit as privileged the report of proceedings in matrimonial actions. In order to foreclose the possibility that the amendment would be so construed, the Governor made it clear that the act was not intended to change or weaken the safeguards of the various provisions designed to protect the secrecy of certain judicial proceedings; this is what he wrote (N. Y. Legis. Annual, 1956, pp. 494-495):
“ * * * it should be noted that our statutes contain many provisions which preserve the secrecy of documents and testimony, such as in matrimonial actions *17 (Rule 278, Civil Practice Act), the secrecy of testimony before a grand jury (Section 952, Code of Criminal Procedure) or statements made by a grand juror during the deliberations of the grand jury (Section 265, Code of Criminal Procedure). There are other comparable safeguards in the Executive, Legislative and Tax Laws and in other laws.
“My approval of this bill cannot and should not be construed as a modification or weakening of the justifiable protections embodied in the laws mentioned. Secrecy and other safeguards where provided by our laws continue to be in effect and to be fully respected.” (Emphasis supplied.)
Viewed in the context of Governor Harriman’s memorandum — which, as stated, provided the only significant legislative history in this case (see, e.g., Teeval Co. v. Stern, 301 N. Y. 346, 362)[6]—it is patent that the amendment was not designed to effect any change in the scope of the privilege as it had been previously applied to judicial proceedings. By deleting the word, ‘ ‘ public, ’ ’ the Legislature was merely extending the privilege to certain quasi-judicial and nonjudicial proceedings — such as those conducted by administrative agencies—which are not generally considered to be “ public ’ ’ in nature or which might not be open to the public. (Cf., e.g., Wiener v. Weintraub, 22 N Y 2d 330.)
As the Appellate Division so well put it in Stevenson v. News Syndicate Co. (276 App. Div. 614, 618-619, affd. on other grounds 302 N. Y. 81, supra),
*18 “ * * * it is illogical to hold that the defendant had the right to publish to its millions of readers information which not one of those readers could personally obtain. In situations where the public have the right of access to proceedings in open court, or the right to inspection of filed papers, the effect of a newspaper publication is that defendant’s reporter is the agent of the public to report to them what they could hear or see if they so desired. [Case cited.] But when the public have no right to see the papers filed in a matrimonial action, a newspaper should not have the right to spread the allegedly false contents of those papers to the public.”
Neither considerations of public policy nor the strictures of the Civil Rights Law require us to permit a defendant to exploit the private life of an individual by publishing sensational charges without bearing the consequences of the harm resulting to him if those published charges are untrue. The records of proceedings in an action for divorce or separation are kept sealed precisely because disclosure of their contents could cause great harm to the persons involved without producing any countervailing public benefit. In short, section 74 of the Civil Rights Law does not afford a party a license to destroy by indirection the salutary protection afforded by section 235 of the Domestic Relations Law.
It follows from what we have written—with respect to an action for libel — that the statutory privilege of fair and true report of a judicial proceeding may not be invoked as a defense to invasion of privacy. Whether or not section 74, captioned and entitled, as it is, “Privileges in action for libel”, would ever be available in an action for invasion of privacy, the policy considerations underlying and embodied in section 235 of the Domestic Relations Law render section 74 unavailable in any suit based upon a report of a matrimonial action in which the disclosure of information is forbidden except by court order.[7]
Nor, where no public figure is involved, may truth be pleaded as a defense to the causes of action for invasion of privacy. *19 The very nature of that tort is the publication and exploitation of a person’s private life and activities in such a manner as to -cause him embarrassment and mental suffering. Since such injury may result even if the material published is entirely accurate, it follows that truth is irrelevant to a charge of invasion of privacy.[8] As Warren and Brandeis declared in their seminal article, The Right to Privacy (4 Harv. L. Rev., at p. 218), “ The truth of the matter published does not afford a defence [to an action for invasion of privacy]. Obviously this branch of the law should have no concern with the truth or falsehood of the matters published. It is not for injury to the individual’s character that redress or prevention is sought, but for injury to the right of privacy. For the former the law of slander and libel provides perhaps a sufficient safeguard. The latter implies the right not merely to prevent inaccurate portrayal of private life, but to prevent its being depicted at all. ’ ’ (Emphasis supplied.)
In sum, the statutory privilege accorded to fair and true report of a judicial proceeding is not available to the defendant for the articles published and may not be invoked as a defense either to the causes of action for libel or for invasion of privacy. Nor is truth a valid defense to the latter causes. The plaintiff’s motion to strike these defenses should have been granted.
The order appealed from should be reversed, with costs, the question certified answered in the negative and the matter remitted to the Supreme Court, New York County, for further proceedings in accordance with this opinion.

. The articles were based upon charges contained in a copy of an affidavit made by the wife in support of her motion for temporary alimony which she had delivered to the defendant.

. Section 235 — which in 1962 replaced rule 278 of the Rules of Civil Practice — insofar as pertinent, recited:

“Information as to details of matrimonial actions.

“ An officer of the court with whom the proceedings in an action to annul a marriage or for divorce or separation are filed, or before whom the testimony is taken, or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party who had appeared in the cause, except by order of the court.”
Although a motion for temporary alimony and affidavits filed in connection therewith are not, technically speaking, “pleadings” (CPLR 3011), the parties have assumed, and there is basis for the assumption, that the affidavit of the plaintiff’s wife and his opposing affidavit—which contained some of the details reported—come within the coverage of the statute.

. Section 74 of the Civil Rights Law reads as follows :

“ Privileges in action for libel.

“A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.
" This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.”

. The fact that the defendant obtained his information not from the court flies but, second hand, from a litigant in the action raises a question whether its articles actually constitute a report of the “ judicial proceeding.” It might well be argued that the articles were nothing more than the republication of accusations made against the plaintiff by his wife which, though similar in content to those made in the course of such a proceeding, were not a part of it and, accordingly, not covered by the statute. Indeed, our recent decision in Williams v. Williams (23 N Y 2d 592, supra) provides some support for the conclusion that one who obtains the information published from the very party authoring *16 the pleading or other writing should not be entitled to assert the statutory privilege of fair report of a judicial proceeding. We held, in the Williams case, that that privilege was unavailable as a defense in a libel action brought against the party who had himself mailed to people in the trade copies of a complaint which he had previously filed against the plaintiff.

. See, e.g., Report of Committee on State Legislation of Association of the Bar of the City of New York, 1956 Bulletin No. 3, p. 83; Report No. 12 of Committee on State Legislation of New York State Bar Association (1956); Memorandum of Executive Secretary of Law Revision Commission (April, 1956); see, also, Memorandum of Governor Dewey vetoing similar 1952 bill, N. Y. Legis. Annual, 1952, p. 381.

. A few years later, when section 235 of the Domestic Relations Law was adopted—to replace rule 278 of the Rules of Civil Practice — the Legislative Committee which recommended its enactment referred to the Danziger case, making it even more manifest that the members of that committee did not believe that it had been overruled or affected by the 1956 amendment. The following comment of the committee is illuminating (Fourth CPLR Report, N. Y. Legis. Doc., 1960, No. 20, p. 386):
“ The matter is of sufficient importance to warrant treatment in the statute, involving as it does the difficult problem of balancing the right of the public to know what goes on in our courts and the need to protect litigants and the courts against scandal-mongering. See Danziger v. Hearst Corp., 304 N. Y. 244, 248-49 ”.

. We would merely note that Special Term’s characterization of the articles as “ fresh news ” has nothing whatsoever to do with the availability of this section 74 privilege as an affirmative defense to an invasion of privacy action.

. See, e.g., Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, 484, affd. 272 App. Div. 759; Youssoupoff v. Columbia Broadcasting System, 19 A D 2d 865; Mau v. Rio Grande Oil Co., 28 F. Supp. 845; Cason v. Baskin, 155 Fla. 198, 217; Barber v. Time, Inc., 348 Mo. 1199, 1205; see, also, Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 218; Hofstadter and Horowitz, The Right of Privacy [1964], p. 256.