OPINION OF THE COURT
Kassal, J.
Does the publication by a newspaper of an article relating to the details of court files in matrimonial proceedings rendered confidential by Domestic Relations Law § 235, give rise to a cause of action for (a) invasion of privacy under Civil Rights Law §§50 and 51, (b) prima facie tort or (c) intentional infliction of emotional distress?
This action was brought to recover damages resulting from the publication of three newspaper articles, relating to a matrimonial action between plaintiff and his wife. The complaint alleges that the publications were in violation of Domestic Relations Law § 235 (1), which provides in respect to matrimonial actions: “An officer of the court * * * or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings, affidavits * * * or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, except by order of the court.”
The three news articles were published in defendant’s The Times Union on September 26 and December 31,1982 and in the Knickerbocker News on December 31, 1982. The publications reported some of the marital difficulties experienced by plaintiff, one of the principals of the Charles Freihofer Baking Company, a well-known company engaged in the sale of baked goods and associated products for more than 70 years. It is undisputed that the factual content of the articles was obtained from confidential court records. The September 26th article, captioned “Freihofer’s Fighting Over the Dough,” quoted extensively from affidavits filed in the marital suit in connection with a pending application for exclusive occupancy of the marital residence, an estate in Loudonville, in which the Freihofers had lived during their 10-year marriage. Included in the article were charges and *138 countercharges of mental and physical cruelty and adultery which formed the legal basis for the matrimonial action.
Following the first publication, plaintiff’s attorneys wrote to The Times Union on October 1, 1982, objecting to the publication of the story and the use of plaintiff’s photograph, advising as to “the statutory confidentiality protecting court papers of this kind” and demanding that there be no further publication or commentary about “the marital discord” between the parties. Nevertheless, on December 31, 1982, The Times Union published its second news story, covering the Appellate Division’s reversal of Special Term’s order, which had ordered the wife to leave the marital abode and set a hearing on the issue of temporary custody of their son. On the same day, the Knickerbocker News carried a similar story that a hearing had been directed to determine exclusive possession of the Loudonville home and referring to the charges and countercharges of “abusive and cruel behavior.”
Defendant admits having reviewed court records in connection with the preparation of the news articles. However, it denies any violation of Domestic Relations Law § 235, contending that papers and pleadings in court actions, including matrimonial suits, are readily available for inspection at the county clerk’s office and the Appellate Division; such an examination is “not an uncommon practice” in the preparation of a news story; and the news media “regularly” reports with respect to matrimonial proceedings which affect the public interest. In addition, the motion was argued in open court and the proceedings were available to the public, including the press. Furthermore, it contends it did exercise discretion by omitting from publication many of the personal details relating to the marital action, contained in filed court papers, which would have subjected the parties to unnecessary ridicule or embarrassment and that the stories merely reported the facts, without any sensationalism. Defendant urges that, notwithstanding the cloak of confidentiality under Domestic Relations Law § 235 (1), it did not violate the statute, which is directed only to officers and clerks of the court and, in any event, considering the prominence of the Freihofer family in the Albany area and the extensive television and newspaper advertising to promote the Freihofer name, the articles did deal with matters of legitimate public interest and concern.
Plaintiff, on the other hand, alleges that the publications were improperly based upon examination of matrimonial court records. As a result, he says he suffered extreme emotional and *139 physical distress, which affected his business and private relationships, diminished his standing in the community, subjected him to public scorn and ridicule and impaired his social life. The complaint for compensatory and exemplary damages contains 12 causes of action: invasion of privacy under Civil Rights Law §§ 50 and 51 (first, fifth and ninth causes of action); intentional infliction of emotional distress (second, sixth and tenth causes of action); prima facie tort (third, seventh and eleventh causes of action); and abuse of process (fourth, eighth and twelfth causes of action).
Special Term dismissed the causes of action for abuse of process and prima facie tort and granted summary judgment dismissing the causes of action for intentional infliction of emotional distress. In doing so, it held (1) no cause of action existed for abuse of process in that there had not been a regularly issued process, civil or criminal, compelling the performance or forbearance of a prescribed act (Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d 397); (2) no claim for relief could be asserted with respect to the violation of Domestic Relations Law § 235, which, by its terms, applied only to an “officer of the court * * * or his clerk”; and (3) insufficient proof had been offered to demonstrate that the publication amounted to outrageous conduct so as to constitute the tort of intentional infliction of emotional distress. Special Term also denied defendant’s motion for summary judgment to dismiss the first, fifth and ninth causes of action for violation of Civil Rights Law §§ 50 and 51, and plaintiff’s cross motion for summary judgment, concluding that there was an issue as to whether the publication of the articles and use of plaintiff’s name and photograph were of legitimate concern to the public.
The Appellate Division unanimously affirmed (102 AD2d 974), observing, in part, with respect to liability under Domestic Relations Law § 235: “One may publish details of a divorce action based on files obtained without court order unless publication thereof is otherwise tortious (Shiles v News Syndicate Co., 27 NY2d 9, cert den 400 US 999).” (102 AD2d, at p 975.) It concluded, however, that there was no statutory violation since the legislation applied only to court personnel. As to those causes of action predicated upon Civil Rights Law §§ 50 and 51, it agreed with Special Term that there were factual issues, as to whether the articles were newsworthy and of public interest or were published merely to increase circulation, which, it held, would violate the statute.
We disagree and, accordingly, modify to dismiss the first, fifth and ninth causes of action under the Civil Rights Law.
*140 CIVIL RIGHTS LAW §§ 50 AND 51
Sections 50 and 51 of the Civil Rights Law make actionable the use of one’s “name, portrait or picture” for advertising or trade purposes, without securing the person’s consent. The statute created a limited right of privacy, which had not existed prior to the enactment (see, Roberson v Rochester Folding Box Co., 171 NY 538). In Roberson, it was held that any protection to be accorded for the unauthorized use of one’s name or photograph was a matter for the Legislature and could not be created by judicial pronouncement. The legislative response came the following year, with the enactment of Civil Rights Law §§50 and 51 (L 1903, ch 132, §§ 1, 2).
We have in the past recognized that, in this State, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51 (Stephano v News Group Pub., 64 NY2d 174; Cohen v Herbal Concepts, 63 NY2d 379; Arrington v New York Times Co., 55 NY2d 433; Flores v Mosler Safe Co., 7 NY2d 276). In these cases, we took cognizance of the limited scope of the statute as granting protection only to the extent of affording a remedy for commercial exploitation of an individual’s name, portrait or picture, without written consent.
Thus, the central issue in any case involving an alleged appropriation of plaintiff’s name, portrait or picture is whether the use by defendant was primarily for trade or advertising purposes within the meaning of the statute. While the statute does not furnish any definition of trade or advertising purposes, it has been held that the protection afforded by this statute to individuals does not apply to the publication of newsworthy matters or events. The “newsworthiness exception” has long been recognized in this State (Binns v Vitagraph Co., 210 NY 51, 52; Gautier v Pro-Football, Inc., 304 NY 354, 359; Booth v Curtis Pub. Co., 15 AD2d 343, 345, affd 11 NY2d 907; Pagan v New York Herald Tribune, 32 AD2d 341, affd 26 NY2d 941; Arrington v New York Times Co., supra) and was most recently reconfirmed in Stephano v News Group Pub. (64 NY2d, at p 184, supra).
Applying the statute here, both Special Term and the Appellate Division were of the view that a factual issue existed as to whether the primary purpose underlying the publications was to report on a news event or matter of public interest or merely to promote circulation. To the contrary, the critical factor as to the statutory protection under Civil Rights Law § 51, is the content of the published article in terms of whether it is newsworthy, *141 which is a question of law, and not the defendant’s motive to increase circulation. As was held in Stephano (64 NY2d, at pp 184-185, supra): “The fact that the defendant may have included this item in its column solely or primarily to increase the circulation of its magazine and therefore its profits * * * does not mean that the defendant has used plaintiff’s picture for trade purposes within the meaning of the statute. Indeed, most publications seek to increase their circulation and also their profits. It is the content of the article and not the defendant’s motive or primary motive to increase circulation which determines whether it is a newsworthy item, as opposed to a trade usage, under the Civil Rights Law (Arrington v New York Times Co., supra, p 440; Booth v Curtis Pub. Co., supra).”
Plaintiff argues that the publication of matrimonial court files, standing alone, amounts to an invasion of privacy, inasmuch as Domestic Relations Law § 235 prohibits such disclosure by court personnel. This contention, however, overlooks the fact that, in the absence of further legislation, there is no independent right to such relief. The Legislature has not established a cause of action for violation of Domestic Relations Law § 235. In any event, no claim to that effect has been interposed here.
Moreover, in light of our holding in Shiles v News Syndicate Co. (27 NY2d 9, cert denied 400 US 999) plaintiff may not do so. In Shiles, defendant had published a series of articles in the Daily News, with respect to a separation action and the allegations therein, including the wife’s accusation that her husband had used his position as an airline executive to entice applicants for jobs as stewardesses to become “women for his private harem,” with the company footing the bill, references to his “sexual habits” and encounters with other women. The action by the husband sought to recover for libel and invasion of privacy, defendant interposing as affirmative defenses that the articles were “fair and true reports of judicial proceedings,” privileged under Civil Rights Law § 74 and further, that the reports were true. In reversing an order which had denied a motion to dismiss those defenses, this court held that one who had published and disseminated the contents of the records of matrimonial proceedings could not rely upon a defense of statutory privilege that the articles were fair and true reports of judicial proceedings. We did recognize, however, that the constitutional right of the press to publish the allegations in a matrimonial suit, obtained from court files without permission, could not be impinged upon except that liability would be imposed for defamatory publication (27 NY2d, at p 15; see also, Danziger v Hearst Corp., 304 NY *142 244, 248-249). Chief Judge Fuld’s observation in Shiles is instructive: “This does not mean that a party may not publish details of a divorce or separation suit based on files obtained without a court order, or that the courts would interfere with the constitutional right of any one to publish such details, but it does mean that, if he does, he will be held accountable and liable if those details are not truthful. (See Danziger v. Hearst Corp., 304 N. Y. 244, 248-249, supra; see, also, Matter of United Press Assns. v. Valente, 308 N. Y. 71, 77.) Thus, in Danziger, where the defendant had published an illegally obtained affidavit, the court, after declaring that the rule of secrecy does not prohibit publication of the details of a matrimonial action that are obtained from a source other than the files of the court, went on to hold that ‘such a publication is actionable if defamatory’ (304 N. Y., at p. 248; emphasis supplied).” (27 NY2d, at p 15.)
Similarly, in Danziger v Hearst Corp. (supra), we upheld the constitutionality of the statute, observing that the legislation was addressed only to employees of the court system: “It does not prohibit access to the minutes of the clerk of the court and thus does not interfere with the right of any person to obtain information in respect of the pendency or result of any matrimonial action. Nor does the rule prohibit publication of the details of a matrimonial action that are obtained from a source other than the files of the court. Of course, such a publication is actionable if defamatory.” (304 NY, at p 248.)
In our case, there is no claim for defamation or that the content of the articles is untruthful. Domestic Relations Law § 235 does not provide for an independent cause of action against those who publish or disseminate matter relating to a matrimonial action obtained in violation of the statute (see, Shiles v News Syndicate Co., supra; Danziger v Hearst Corp., supra).
PRIMA FACIE TORT
We agree that no cause of action has been pleaded for prima facie tort and, accordingly, the third, seventh and eleventh causes were properly dismissed. Prima facie tort affords a remedy for “ ‘the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful’ ” (ATI, Inc. v Ruder & Finn, 42 NY2d 454, 458; see also, Advance Music Corp. v American Tobacco Co., 296 NY 79; Opera on Tour v Weber, 285 NY 348; Wehringer v Helmsley-Spear, Inc., 59 NY2d 688, affg 91 AD2d 585). The requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special *143 damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful (Curiano v Suozzi, 63 NY2d 113, 117; Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 332). A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages (see, Curiano v Suozzi, supra, at p 117; ATI, Inc. v Ruder & Finn, supra, at p 458; Morrison v National Broadcasting Co., 19 NY2d 453, 458; Nichols v Item Publishers, 309 NY 596, 602; Susskind v Ipco Hosp. Supply Corp., 49 AD2d 915). Here, no special damages are alleged and apparently none exist.
Moreover, it has been observed that “[p]rima facie tort should not become a ‘catch-all’ alternative for every cause of action which cannot stand on its own legs.” (Belsky v Lowenthal, 62 AD2d 319, 323, affd 47 NY2d 820; Burns Jackson Miller Summit & Spitzer v Lindner, supra, at p 333). Where relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort (see, Ruza v Ruza, 286 App Div 767; Porterfield v Saffan, 7 AD2d 987; Susskind v Ipco Hosp. Supply Corp., supra; Springer v Viking Press, 90 AD2d 315). However, where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative relief, a cause of action for prima facie tort (see, Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d, at pp 405-406, supra). Although we did recognize that “there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim”, we do not deem this to be an appropriate case for such relief. The newsworthy content of the articles constitutes sufficient justification for its publication.
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
We also agree with the dismissal of the second, sixth and tenth causes of action. The tort of intentional infliction of emotional distress predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society (Fischer v Maloney, 43 NY2d 553, 557; see also, Murphy v American Home Prods. Corp., 58 NY2d 293, 303). In Fischer v Maloney (supra), we adopted the rule set forth in Restatement (Second) of Torts § 46 (1) that: “One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.” Clearly, the facts alleged here do not *144 meet this standard and summary judgment was warranted in the absence of any supporting proof.
In conclusion, no cognizable claim for relief on any theory has been alleged or proved and, therefore, the complaint should have been dismissed in its entirety.
Accordingly, the order of the Appellate Division should be modified to the extent of dismissing the first, fifth and ninth causes of action and, as so modified, affirmed, with costs, and the certified question answered in the affirmative.
Judges Jasen, Meyer, Simons, Kaye and Alexander concur; Chief Judge Wachtler and Judge Titone taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to defendant. Question certified answered in the affirmative.