Ann M. Murphy et al., Respondents, v A. Louis Shure, P. C., et al., Appellants.

First Department, April 5, 1990

## APPEARANCES OF COUNSEL

*Herbert G. Lindenbaum* of counsel *(Philip G. Kadanoff, P. C.,* attorney), for respondents.

*Patricia D'Alvia* of counsel *(Gerard A. Marulli* with her on the brief; *Morris & Duffy,* attorneys), for appellants.

### OPINION OF THE COURT

Asch, J.

Plaintiff Ann Marie Murphy, only 24 years old at the time, underwent a bunionectomy on July 28, 1982, in the course of which the defendant removed an excessive amount of bone and cut the adductor tendon. As a result, plaintiff experienced excruciating pain. In October 1984, she underwent a second operation involving the cutting of two pieces of bone from the distal and middle phalanx and the insertion of a screw so that the interphalangeal joint would be fused. Since the bones were welded together, the interphalangeal joint was no longer mobile. Subsequently, in January of 1985, plaintiff was again operated on for removal of the screw and insertion of permanent sutures.

Plaintiff's expert at the trial opined that the condition was permanent and that plaintiff would require additional surgery, i.e., another fusion, with only a 50% chance of success. This would leave her with a total lack of motion in the foot. An alternative procedure would require the insertion of an artificial joint which has a life expectancy of only up to 10 years. Further, the medical expert was of the opinion that plaintiff was almost assured of developing degenerative arthritis in the future.

The jury obviously credited the testimony of plaintiff and her witnesses with respect to her present and future pain as well as limitations of use. In addition, while plaintiff was not totally disabled and could continue her occupation as a book-keeper, the disability and pain resulting from the first negligently performed operation precluded her from continuing her normal and active life-style. As we have recently noted: "There can be little doubt that loss of enjoyment of life may be measured in damages in New York as an element of pain and suffering. A host of cases have discussed the issue tangentially, usually in the context of defending awards for pain and suffering. *(See, e.g., Gallo v Supermarkets Gen. Corp.,* 112 AD2d 345, 347 ['this formerly healthy, athletic, social, confident and helpful young man has now become a virtual recluse, who can no longer lead a normal life']; *Bottone v New York Tel. Co.,* 110 AD2d 922, 924 ['severe restrictions on past, present and future activities']; *Alexander v Eldred,* 100 AD2d

666 [injury 'prevents his participation in volleyball, tennis and skiing']; *Sternemann v Langs,* 93 AD2d 819, 820 ['(a)s a result, the plaintiff has effectively lost much of the use of her right arm, has been deprived of a social life']; *Rowan v County of Nassau,* 91 AD2d 608, 609 ['she is unable to participate in any of the sports and physical activities in which she was involved prior to the accident']; *Neal v Rainbow House Fruits,* 87 AD2d 511 [injury 'has significantly restricted her normal activities']; *Warmsley v City of New York,* 89 AD2d 982, 984 ['plaintiff, who was very active prior to this occurrence, now feels she can do very little or nothing at all']; *Riddle v Memorial Hosp.,* 43 AD2d 750, 751 ['It is also proper to consider, in the case at hand, impairment or loss of artistic pursuits' for which this housewife 'did not receive financial remuneration' but which 'was an important part of her life'].)" *(McDougald v Garber,* 135 AD2d 80, 89, *mod on other grounds* 73 NY2d 246.)

Under the circumstances present herein, the jury's award cannot be considered so excessive that it shocks the conscience of the court. This last phrase is not a mere incantation to be used whenever we disagree with the verdict of the jury, "but rather of the court following a conscience formed in the light of existing standards of propriety as to the amount of the verdict" *(De Luca v Wells,* 58 Misc 2d 878; *see also,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4404.10).

We note that CPLR 4111 now provides that the court shall instruct the jury in medical, dental or podiatric malpractice actions to "[S]pecify the applicable elements of special and general damages upon which the award is based and the amount assigned to each element, including but not limited to medical expenses, dental expenses, podiatric expenses, loss of earnings, impairment of earning ability, and pain and suffering. * * * [E]ach element shall be further itemized into amounts intended to compensate for damages which have been incurred prior to the verdict and amounts intended to compensate for damages to be incurred in the future. In itemizing amounts intended to compensate for future damages, the jury shall set forth the period of years over which such amounts are intended to provide compensation" (subd [d]).

Subdivision (e) requires itemization in actions against public employers and subdivision (f) requires similar itemization of damages in tort actions in general.

CPLR 5501 has also been amended to provide: "In reviewing

a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate * * * the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation" (subd [c]).

Further, CPLR 5522 now provides in subdivision (b): "In an appeal from a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate, the appellate division shall set forth in its decision the reasons therefor, including the factors it considered in complying with subdivision (c) of section fifty-five hundred one of this chapter."

These provisions apply to any action in which the trial commences after August 1, 1988 (L 1985, ch 294, as amended by L 1988, ch 184, § 17, eff July 1, 1988). The trial in this action commenced in June 1988 and, therefore, these provisions are inapplicable herein. We note that while we have used the traditional standard of not "shocking the conscience of the court" in upholding the verdict of the jury, we also find that such verdict does not deviate "materially from what would be reasonable compensation" (CPLR 5501 [c]), the newer standard.

Accordingly, the judgment of the Supreme Court, New York County (Stanley Sklar, J.), entered January 4, 1989, after trial by jury, awarding plaintiff Ann Marie Murphy the sum of $786,000 and her husband, plaintiff James Murphy, the sum of $10,480, should be affirmed, without costs or disbursements.

KUPFERMAN, J. P., KASSAL, ELLERIN and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 4, 1989, unanimously affirmed, without costs and without disbursement.