242

BERNARD HARVEY et al., Respondents-Appellants, v MAZAL AMERICAN PARTNERS et al., Doing Business as ASSAY PARTNERS et al., Appellants-Respondents.

ASSAY PARTNERS et al., Third-Party Plaintiffs-Appellants-Respondents, v MOSHER STEEL COMPANY, a Division of TRINITY INDUSTRIES, INC., et al., Third-Party Defendants-Appellants-Respondents.

ASSAY PARTNERS et al., Fourth-Party Plaintiffs-Appellants-Respondents, v ATLAS-GEM JOINT VENTURE, Fourth-Party Defendant-Appellant-Respondent.

First Department, February 19, 1991

244

**APPEARANCES OF COUNSEL**

*James L. Fischer* of counsel *(Edward A. Magro* and *Richard E. Lerner* with him on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for Mazal American Partners and others, appellants-respondents.

*Joseph Kelner* of counsel *(Robert S. Kelner* and *Arthur I. Strier* with him on the brief; *Kelner & Kelner,* and *Arthur I. Strier, P. C.,* attorneys), for plaintiffs-respondents.

*Peter Pearson Traub, Jr.,* of counsel *(Goldon & Silber, P. C.,* attorneys), for Gem Steel Erectors, Inc., Atlas-Gem Erectors Co., Inc., and Atlas-Gem Joint Venture.

*James M. McLaughlin* of counsel *(James L. Fischer, Edward A. Magro* and *Richard E. Lerner* with him on the brief; *Flynn, Gibbons & Dowd,* attorneys), for third-party defendant-respondent.

**OPINION OF THE COURT**

Asch, J.

Defendant Assay Partners owns 32 Old Slip upon which they built the "Financial Center". Defendant HRH Construction was hired as the general construction manager for the project. In 1985 HRH, as Assay's agent, signed a contract with Mosher Steel, a steel manufacturer, which agreed to furnish all labor and materials required for the installation of all structural steel. Mosher also contractually assumed the responsibility for liability arising out of injury or death of any person arising out of performance of its work. The indemnification, however, was qualified in that Mosher was not obligated to indemnify for claims arising from negligence of the party to be defended, indemnified or held harmless.

Subsequently, Mosher contracted with Atlas-Gem Joint Venture, comprised of Gem Steel Erectors, Inc. and Atlas-Gem Erectors Co., Inc., which agreed to furnish all labor, material and equipment necessary to unload, hoist and erect the structural steel, and provide the necessary accessories for such installation. Subcontractor Gem Steel agreed to assume all liability for personal and property damage arising from its employees' handling of the steel and to indemnify and hold the steel contractor harmless from liability.

On July 25, 1986, 54-year-old plaintiff Bernard Harvey, stepped on an unsupported wooden plank installed by Gem Steel which gave way, causing plaintiff to fall head first two

floors to the next level. Upon sustaining serious and permanent damage to his brain and spinal system, plaintiff and his wife commenced this action pursuant to Labor Law §§ 240 and 241 (6) against Assay Partners and HRH, seeking $20,000,000 in damages. Assay Partner and HRH commenced third-party actions, *inter alia,* against Mosher and Atlas-Gem Joint Venture.

The IAS court granted plaintiffs summary judgment on the issues of liability against defendants Mazal American Partners, Gezint Corporation, Hoson Holdings, Inc., Elstar Associates, a limited partnership, all doing business as Assay Partners and HRH. Thereafter, this court affirmed (145 AD2d 1006).

After jury trial on the issue of damages and apportionment and a posttrial motion to set aside the verdict as being excessive, plaintiffs had a total award of $27,084,819.03 which was reduced to $14,304,042.

The jury apportioned liability as follows: HRH 55%, Mosher 5% and Gem Steel 40% liable. The court, on the posttrial motion overturned the jury's finding of liability against Mosher and divided the 5% pro rata between HRH and Gem Steel, resulting in HRH being deemed 57.9% liable and Gem Steel 42.1% liable.

█ Plaintiff urges an affirmance of the jury's award for past pain and suffering and, reinstatement of the jury's award for future pain and suffering, past and future lost wages and past and future loss of consortium. Since plaintiffs limited their notice of appeal to the court's reduction of Bernard Harvey's "past and future lost wages" and the jury verdicts in favor of plaintiff Margaret Harvey for past and future loss of consortium, they have waived their claim to reinstatement of the jury's award for future pain and suffering *(Beauchamp v Riverbay Corp.,* 156 AD2d 172).

Defendants Assay Partners, HRH and Gem Steel urge that the damage awards are clearly excessive and must be set aside. They also contend that they were deprived of a fair trial when the court: (1) permitted plaintiff Bernard Harvey to testify without having been sworn; (2) declined to permit disclosure of plaintiff's confidential marital file; and (3) entered judgment against individual partners of Assay Partners although not one of them was served with the summons.

█ An assessment of damages should not be disturbed unless it is so excessive that it shocks the consciences of the court. *(Graham v Murphy,* 135 AD2d 326, 330.)

In the case at bar, as a result of his fall, plaintiff Bernard Harvey sustained chronic subdural hemotomas, severe cerebral encephalopathy fractures of the 12th thoracic, 6th and 7th cervical vertebrae and fractures of the 10th, 11th and 12th left ribs. Plaintiff was admitted to the hospital in a comatose state and remained in such condition for the next nine weeks. At Bellevue Hospital, plaintiff underwent a tracheotomy and a gastrostomy. Additionally, he was diagnosed as suffering from incomplete paraplegia and incontinency of the bowel and bladder. On October 5, 1986, plaintiff was admitted to New York University Medical Center, where he regained consciousness but suffered from disorientation with severe memory deficits, echolalia (repetition of words), and immobility, requiring extensive medical care. Further, plaintiff went from being a working man who provided for himself and others to someone who now needed to be fed, clothed, diaper changed, and who was constantly crying and highly agitated, due partially to the fact that his condition requires him to be physically restrained. Family members described plaintiff before the accident as a person who enjoyed social relationships with family and friends, including, but not limited to, vacations, boating and other hobbies.

Plaintiff's award for future medical, nursing and custodial expenses does not warrant a reduction. The court reduced the award of $9,915,927.25 for 20.2-years to $7,051,774.60 over the same period based on 24-hour nursing care, estimated at a yearly cost of $349,073. The medical testimony established that plaintiff Harvey required such 24-hour nursing care. Although defendants urge that there was no requirement that a private nurse was medically required around the clock to do work of staff members, it cannot be said that this portion of the award was excessive.

■ Plaintiff wife's loss of consortium award, totaling $953,-000 for a 20.2-year period of loss of services does not deviate "materially from what would be reasonable compensation." (CPLR 5501 [c]; *see, Murphy v A. Louis Shure, P. C.,* 156 AD2d 85, 88.)

Defendants argue that the Trial Judge committed reversible error when he authorized plaintiff Harvey to be exhibited and questioned before the jury without being sworn as a witness.

■ A subject, the condition of whom is relevant to the issue, may be presented in open court, to afford the trier of fact an opportunity to evaluate the alleged condition by the direct use

of their senses. Accordingly, in a personal injury case, the plaintiff may show his injured arm to the jury so that they may decide the extent and nature of the injury. *(See, e.g., Mulhado v Brooklyn City R. R. Co.,* 30 NY 370.) Indeed, this technique frequently represents a valuable and reliable method of proof. (4 Wigmore, Evidence § 1150 [Chadbourn rev].)

Even though such demonstrative evidence may have the effect at times of "inflaming the passions of the jury" or inciting extreme sympathy, that itself does not serve as a basis for exclusion. (Richardson, Evidence § 131 [Prince 10th ed].) However, in the instant case, such effect was not apparent.

As the Court of Appeals wrote in *Mulhado (supra,* at 372) where it refused to accept the defendant's claim that the plaintiff should not have been permitted to show his injured arm to the jury: "As well might it be contended, that a man who had lost an arm or a leg, by a similar injury, should not be permitted to appear before a jury to testify in relation to it, lest thereby their feelings might be influenced, and, under the undue excitement created thereby, they might do injustice."

In the case before us, after the testimony had proceeded for two days, during which time plaintiff was not in court, the Judge permitted the plaintiff to be exhibited in his wheelchair before the jury and then his lawyer questioned him. Apparently, the defendant objected to this procedure at a conference with the Judge, off the record. Nevertheless, the court ruled that plaintiff could appear, even though not under oath, and answer questions put to him by his lawyer for the purported purpose of showing the nature and extent of his brain damage.

Harvey had not testified at an EBT because of his lack of competency and his wife had been appointed conservator for the purpose of litigation. Usually, testimony is given under oath where its truth or falsity can be tested through cross-examination. Here, however, the questions put to the plaintiff and the responses to them were not offered for the truth of the information contained in the answers. Rather, they were designed to show the state of Harvey's mental condition as a result of his injuries. And, of course, a firm foundation had been laid by the testimony of plaintiffs' neurologist and other witnesses, all subjected to the oath and the crucible of cross-examination. Defendants were not denied an opportunity to question plaintiff but they chose not to do so.

Plaintiff was asked a number of questions relating to whether he recognized his wife, a son, who was present in the courtroom, the number of children and grandchildren, their names, hobbies and the number of days in a week and a year. Plaintiff gave barely audible and repetitious answers as well as inconsistent responses to the same question. Thus, when asked if he knew the name of a son, who was present at trial, he responded "My son" twice. When asked how many children he had, he answered "seven", "nine boys" and "two girls", then "one girl". As a matter of fact, he has 5 sons and 1 daughter. Plaintiff also answered that there were 7 days, and later 9 days, in a year. Defendants moved for a mistrial. The court denied the motion and gave the following reason:

"THE COURT: You (the defendants) misinterpret what I am saying. I am saying that I did not permit him to give any answers where the truth of the answers might be relevant to this procedure. I just thought, and still believe, that the way he talks and what he remembers is part of his condition, and either I allow him to be questioned so that comes out, or I don't allow him in the courtroom at all. It seems to me it's all one and the same thing, and I see no reason why, as a physical, his physical condition, which includes his ability to talk and his, well, the better than I expected, understanding to what's going on was relevant to this procedure.

"THE COURT: I am very familiar with all of the cases about the exhibits of bodies, injuries, et cetera, and I understand that I must balance the value of showing the jury the injuries, which is what I believe I was doing in this case, and the prejudice and emotional response that may result from it. * * * It was more prejudicial than the description of him has been * * * and I think the value of seeing him for this brief period of time to this case certainly out-balances any prejudice, and the prejudice isn't prejudice.

"So, the balancing, I watched the jury very carefully, and they did seem very interested, but I didn't notice anybody having an emotional reaction, and I watched them very carefully, because if they had, if anybody had hidden their eyes or gotten terribly upset, I would have terminated much earlier than I did, but I saw absolutely no emotional reaction."

Essentially, the court treated plaintiff's appearance and testimony as an exhibit to help the jury in making its determination.

It had been argued that the plaintiff should not have been

permitted to give an actual demonstration of the effects of the injury. But the determination as to whether this tactic is appropriate rests in the sound discretion of the court and considerable latitude has been afforded the Trial Judge. (32 CJS, Evidence, § 602, at 758.) A case in this regard is *Clark v Brooklyn Hgts. R. R. Co.* (177 NY 359). This was an action to recover damages for personal injuries. On trial the plaintiff was allowed to stand assisted and to exhibit himself to the jury in the act of writing his name and taking a drink of water. The purpose of this exhibition was to illustrate that as a result of the accident he was affected by a tremor or muscular twitching. In affirming the judgment for plaintiff, the Court of Appeals said:

"We think that the court should not have stretched its discretion to such an extent and that, while it may not have been an abuse of judicial discretion, it was on the border line of such an error. * * *

"As something under the sole control of the witness himself, it is beyond the ordinary tests of examinations" *(supra,* at 361-362).

Since, however, the matter was discretionary with the trial court, the Court of Appeals affirmed the judgment. *(See also, Wesler v Kassl,* 109 AD2d 740; *Riddle v Memorial Hosp.,* 43 AD2d 750.)

■ Defendants HRH, Assay Partners and Gem Steel urge that the trial court also erred in denying disclosure of plaintiffs' matrimonial file because plaintiff's wife was claiming future loss of consortium. Under the instant circumstances, however, we find that the trial court did not abuse its discretion is disallowing disclosure of the file. The parties are at odds as to what was contained in the matrimonial file. Plaintiffs maintain it was a separation proceeding that lasted for only seven months. Defendants urge it was a divorce action that was still pending at the time of trial. The record on appeal fails to shed light on this matter. Nevertheless, the undisputed fact remains that the subject matrimonial file pertains to an action commenced in 1977. There was no showing that plaintiffs were living apart in 1983 at the time of the occurrence of the accident. No sufficient nexus between the marital proceedings and plaintiff's injury was demonstrated to warrant overcoming the statutory protection accorded to testimony and pleadings in a matrimonial action. *(See,* Domestic Relations Law § 235 *[Janecka v Casey* (121

AD2d 28) cited by defendants is not contrary. In that case, plaintiff husband brought a wrongful death action against a psychiatric hospital where his wife committed suicide two months after her discharge. The hospital records revealed however, that the deceased had admitted herself "stating that she felt abandoned and neglected ever since her husband had, two years earlier, commenced an action for divorce and custody of their three children" *(supra,* at 29)].)

■ However, we find it was error to enter judgment against defendant Assay Partners' individual partners, Mazal American Partners, Gezint Corporation, Hoson Holdings, Inc. and Elstar Associates since these parties were never served with process, nor did any of the individual partners appear in this action *(see,* CPLR 5018). Plaintiffs served a summons and verified complaint on Assay Partners, but not the individual partners. Moreover, Assay Partners' verified answer to the complaint was limited to the appearance of Assay Partners and HRH. Thus, we correct the judgment of January 17, 1990 *(see,* CPLR 5019) to reflect that the individual partners of Assay Partners were "not summoned".

As to this second judgment of July 16, 1990, defendants Assay Partners and HRH maintain: (1) that the jury's verdict as to apportionment is against the weight of the evidence, (2) the trial court erroneously set aside the jury's verdict as to Mosher, and (3) Assay Partners and HRH are entitled to full indemnification from Gem Steel. In opposition, Gem Steel urges that the apportionment of liability should not be disturbed and that the indemnification issue was already decided by this court's affirmance of the IAS court's prior order in which the court determined that no party was entitled to indemnification if a jury were to find that the indemnitee was actively negligent itself. Meanwhile, Mosher contends that since there was no testimony that it participated in maintaining safety standards at the jobsite, the third-party complaint was properly dismissed.

■ For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence, it must appear that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial. *(Cohen v Hallmark Cards,* 45 NY2d 493, 499.)

The record here supports the conclusion that HRH failed in

its duty to maintain a safe place to work. HRH's employees were obligated to conduct safety meetings for all subcontractors, make daily on-site inspections and prevent potential accidents from occurring to the general public and the workers on the entire jobsite. HRH, at times, removed the planks of the same kind which caused plaintiff's fall. While it is true that Gem Steel had several employees who also participated in the implementation of safety procedures for its workers, it was HRH's own employee, Tony Ramos, who served as corporate safety director and was charged with making sure that all safety statutory regulations were observed. Nevertheless, he failed to observe and/or prevent the laying of unsecured plank over open shafts, which was a violation of OSHA regulations. It was such a loose plank that plaintiff stepped on which led to his fall and injuries.

■ HRH's claim that Gem Steel must indemnify the third-party plaintiffs is meritless as the indemnification clause in question clearly exculpated Gem Steel from indemnifying either party for their own acts of negligence. The indemnification clause reads in pertinent part: "However, nothing herein contained shall require the Contractor to provide indemnification against the proportion of any liability for claims which are proven to have arisen from the negligence of the party asked to be defended, indemnified or held harmless."

HRH attempted to avoid this provision by contending that since Mosher can require Gem Steel to indemnify Mosher for another's acts of negligence, then Mosher can require Gem Steel to indemnify HRH for HRH's own negligence. This would be contrary to the intent behind General Obligations Law § 5-322.1. (See, Brown v Two Exch. Plaza, 76 NY2d 172 [General Obligations Law § 5-322.1 does not bar enforcement of an indemnification clause in contract between general contractor and a subcontractor where there is no finding of negligence on the part of the general contractor].)

Accordingly, the judgment of the Supreme Court, New York County (Shirley Fingerhood, J.), entered January 17, 1990, which, inter alia, granted a new trial upon the issue of damages unless plaintiffs stipulated to a reduction in the jury award, should be modified, on the law and facts, solely to the extent of correcting such judgment to reflect that defendant Assay Partners' individual partners were "not summoned" pursuant to CPLR 5018 (a), and otherwise affirmed without costs or disbursements. The judgment of the same court and Justice, entered July 16, 1990, which, inter alia, apportioned

liability in the third-party action, should be affirmed, without costs and disbursements.

Ross, J. P., KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered January 17, 1990, modified, on the law and facts, solely to the extent of correcting such judgment to reflect that defendant Assay Partners' individual partners were "not summoned" pursuant to CPLR 5018 (a), and otherwise affirmed, without costs or disbursements; and judgment of the same court and Justice entered July 16, 1990, affirmed, without costs or disbursements.