OPINION OF THE COURT
Frank V. Ponterio, J.
On July 29, 1987, plaintiff Vincent Lauria was involved in an automobile accident in which a car operated by him was rear-ended by a vehicle owned by defendant New York City Department of Environmental Protection (DEP) and operated by defendant George Ares. Plaintiffs commenced this personal injury action claiming permanent soft tissue spinal injuries to Vincent Lauria and loss of services to his wife, Jean Lauria. The case was tried before a jury which on July 18, 1991 found that Lauria had sustained a serious injury as defined by Insurance Law § 5102, and that the negligence of Ares was a substantial factor in causing Lauria’s injuries (DEP had stipulated to 100% negligence attributable to Ares). The jury awarded Lauria damages of $45,000 for past pain and suffering and $40,000 for future pain and suffering over a period of 10 years from the date of trial. No claim was made for lost earnings or other special damages. An award of $15,000 was made on plaintiff Jean Lauria’s derivative claim for loss of services. At the close of trial, plaintiffs moved to conform the pleadings to the proof. Defendants moved to dismiss on the ground that the bill of particulars is defective in that it does not specify aggravation of prior injuries. Plaintiffs’ motion is granted. Defendants’ motion to dismiss is denied since the court sustained defendants’ objection to testimony concerning aggravation of prior injuries. Defendants also moved, pursuant to CPLR 4404, for a new trial on the ground that the verdict is contrary to the weight of the evidence or in the alternative for a reduction in the amount of damages. Defendants assert that the standard of review to be applied by this court in deciding whether to reduce the amount of damages is that *545 stated in CPLR 5501 (c), viz., that the award deviates materially from what would be reasonable compensation, and not that associated with CPLR 4404, viz., an award that shocks the conscience of the court. Defendants further move for a new trial on the grounds of newly discovered evidence, viz., a bill of particulars verified by Lauria in a prior action in which similar injuries were alleged for an accident that occurred in May 1985. Defendants claim that they were unable to obtain the bill from Lauria’a attorney in that case until after this trial was concluded.
With regard to whether the evidence supports plaintiffs’ verdict in the first instance, defendants assert a lack of proof of medical causation. They cite the lack of credibility of plaintiffs’ sole medical witness, a chiropractor, and plaintiffs’ failure to call any of four treating physcians to testify. Defendants argue that the testimony of the chiropractor, Dr. Campana, should be given no weight. They point to his reluctance to be truthful when questioned about activities that appear to constitute the illegal practice of medicine and the general tenor of his testimony regarding medical causation, i.e., that his opinion was without "a reasonable doubt” and that his opinion was unaffected by the revelation at trial of a previously undisclosed prior accident resulting in a back injury even though he had no knowledge of the severity of that injury. Defendants’ medical witness, Dr. Marone, a physician specializing in trauma and sports medicine, attributed Lauria’s injuries at least in part to the accident involved in this case. When presented with the previously undisclosed injury, Dr. Marone testified that the fact of that prior injury would modify but not negate his opinion. In particular, he testified that initially he would attribute Lauria’s present condition perhaps 50% to the accident in this case and 50% to prior accidents and aging. Taking into consideration the newly revealed accident he opined that he might change this attribution to 60%/40% or 65%/35%, i.e., he would assign somewhat greater weight to prior injuries and aging. Chiropractic testimony is admissible to establish a causal connection between an accident and resulting injuries. (Badke v Barnett, 35 AD2d 347 [2d Dept 1970], lv denied 28 NY2d 482.) Issues of credibility and the weight of testimony are matters to be resolved by the trier of facts. In this case the jury was given an appropriate expert witness charge as well as missing witness charges for the uncalled treating physicians. The jury obviously found sufficient credible testimony to support a finding of medical *546 causation. Nevertheless, it is not possible to discern whether the jury’s finding was based in whole or part upon the testimony of Dr. Campana since some degree of causation was established by the testimony of defendants’ physician, Dr. Marone. (Defendants did not move to dismiss for failure to state a prima facie case either after the close of plaintiffs’ case or after trial. Consequently, for all motions the testimony of both medical witnesses is properly before the court as it was before the jury.) Under these circumstances, I find that a reasonable jury could conclude that there was sufficient proof of medical causation with regard to at least some of Lauria’s injuries.
Defendants further argue that a new trial should be granted because of the appearance after trial of new evidence. The evidence is a bill of particulars in an unrelated prior personal injury case. In that case, Lauria claimed back and neck injuries arising from an automobile collision in May 1985. Defendants’ attorney stated that he sought the bill prior to the trial from Lauria’s attorney and was told it was unavailable. Subsequently, but after this trial was concluded, the bill was produced. Defendants’ attorney claims he was prejudiced by the absence of the bill in his cross-examination of Lauria. Newly discovered evidence will not support a motion for a new trial unless it is shown by the movant that (a) the evidence was discovered since the trial, (b) the evidence could not have been discovered with due diligence prior to the trial, (c) the evidence is material, and (d) the evidence is sufficiently cogent to be likely to affect the jury’s verdict (and not merely cumulative or impeaching). (Stoddard v Stoddard, 37 NYS2d 605, affd 264 App Div 980.) The city has failed to demonstrate due diligence, e.g., it apparently made no effort to obtain the bill from the defendants’ attorney in the prior case. Moreover the city has not shown how the bill would have been used other than to impeach Lauria nor has it made any convincing argument that its use at trial could result in a different verdict. I find therefore that the absence of the bill during the trial is in itself not a sufficient cause for granting a new trial.
The jury’s verdict on damages is also attacked as excessive. The amount awarded to Vincent Lauria is for pain and suffering only and there is no precise yardstick for the measurement of such damages. "The matter is to be left largely to the common sense and good judgment of the jurors”. (Paley v Brust, 21 AD2d 758 [1st Dept 1964].) Nevertheless, an award that is grossly excessive or inadequate may be set aside by the *547 court. The commonly accepted standard of review by a trial court is that the award shocks the conscience of the court. (Wittman v Gilson, 120 AD2d 964 [4th Dept 1986], appeal dismissed 68 NY2d 806, lv denied 69 NY2d 602, lv granted 69 NY2d 609, affd 70 NY2d 970; Walters v Charfil Holding, 115 AD2d 472 [2d Dept 1985].) Defendants contend that a different and less stringent standard of review should be applied in light of CPLR 5501 (c) as amended by Laws of 1986 (ch 682, § 10) i.e., that the award "deviates materially from what would be reasonable compensation.” CPLR 5501 (c) explicitly applies only to review by the Appellate Division. The standard of review for lower courts has not been codified. CPLR 4404 governing posttrial motions permits a trial court to order a new trial where a verdict is contrary to the weight of the evidence. The "shocks-the-conscience” standard has its origin in decisional law and has not been explicitly superseded by statute or rule. Thus, two questions arise: does CPLR 5501 (c) apply to the trial court? and does the "reasonable compensation” standard differ from the "shocks-the-conscience” standard? "The amendment [of CPLR 5501 (c)] invites the appellate division’s alteration of the verdict on the presumably lighter finding that the award 'deviates materially from what would be reasonable compensation’, while the trial judge is still limited to the 'shocks the conscience’ criterion. It will be for the appellate courts to explore the gap between the two standards. Many judges believe there is no difference, observing only half in jest that a trial judge’s conscience is likely to be shocked by whatever an appellate division judge would find to deviate materially from 'reasonable compensation’.” (Siegel, NY Prac § 407, at 617-618 [2d ed].) Professor Siegel answers the first question in the negative, i.e., limits CPLR 5501 (c) to the Appellate Division. Presumably by extension of his reasoning, the "gap” also applies to review by the Appellate Term since the 1986 amendment to the CPLR made no change to CPLR 5501 (d). Thus, if the gap is real, two seemingly undesirable consequences could result: a proliferation of appeals, since an appeal from a trial court’s order would be virtually mandated no matter how the trial court rules; and different ground rules on appeal for a case if tried in Supreme Court and the same case if tried in Civil Court pursuant to a CPLR 325 (d) transfer, since the former is appealable to the Appellate Division while the latter is appealable to the Appellate Term.
No appellate court has squarely confronted and decided the *548 reach and impact of CPLR 5501 (c). The First Department appears, impliedly at least, to hold that the statute applies to a trial court. "The IAS court properly determined that damages of $180,000 deviated materially from what would be reasonable compensation (CPLR 5501 [c])”. (Ramos v City of New York, 169 AD2d 687 [1st Dept 1991]; emphasis added.) The First Department has also implied that the gap between the standards is real. "We note that while we have used the traditional standard of not 'shocking the conscience of the court’ in upholding the verdict of the jury, we also find that such verdict does not deviate 'materially from what would be reasonable compensation’ (CPLR 5501 [c]), the newer standard.” (Murphy v A. Louis Shure, P. C., 156 AD2d 85, 88 [1st Dept 1990].) The waters were somewhat muddied in a later decision in which the First Department applied the shocks-the-conscience standard to an injured plaintiff but applied the reasonable compensation standard to the plaintiff’s wife on her derivative claim for loss of services. (Harvey v Mazal Am. Partners, 165 AD2d 242 [1st Dept 1991].) On the other hand, the Second Department, in dicta, acknowledged the continued existence of the shocks-the-conscience standard at the trial court level and also observed that the reasonable compensation standard was intended by the Legislature to give the Appellate Division greater latitude than the trial court in modifying jury verdicts. Although the case involved an action commenced prior to the effective date of the 1986 amendment of CPLR 5501 (c), the defendant sought a reduction of the verdict on appeal in accordance with the reasonable compensation standard. The court noted that the 1986 legislation "was apparently intended to relax the former standard of review and to facilitate appellate changes in verdicts”, and characterized the shocks-the-conscience standard as a "former and stricter standard of review”. (O’Connor v Graziosi, 131 AD2d 553, 554 [2d Dept 1987], lv denied 70 NY2d 613.) This view is consistent with recognized principles of statutory construction and interpretation. Had the Legislature intended to change the standard of review for the trial courts (or the Appellate Term) it could have done so. It did not. "The Legislature in enacting statutes is presumed to have been acquainted with the common law”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [a]; Transit Commn. v Long Is. R. R. Co., 253 NY 345 [1930].) Moreover, "The common law is never abrogated by implication but on the contrary it must be held no further changed than the clear import of the language *549 used in a statute absolutely requires.” (McKinney’s Cons Laws of NY, Statutes § 301 [b]; Westchester Ch., Civ. Serv. Employees Assn. v Levitt, 50 AD2d 1105 [3d Dept 1975].) I find therefore, that, notwithstanding its negative implications, CPLR 5501 (c) does not apply to a trial court and that as a consequence a trial court continues to be bound by the more demanding shocks-the-conscience standard. Although the jury’s award in this case is remarkably generous considering Vincent Lauria’s age and general physical condition I do not find that the amount of damages is so excessive as to shock the conscience of the court. Accordingly, defendants’ motion is denied.