WAUSAU BUSINESS INSURANCE COMPANY as subrogee to the rights of Central Synagogue, Plaintiff,

v.

TURNER CONSTRUCTION COMPANY, Amis Inc. and Aris Development Corporation, Defendants.

Turner Construction Company, Third–Party Plaintiff,

v.

Trident Mechanical Systems, Inc., Trident Mechanical Systems, Inc., a division of Dualstar Technologies Corp., Trident Mechanical Systems, Inc., a wholly-owned subsidiary of Dualstar Technologies Corp., Dualstar Technologies Corp., Atkinson Koven Feinberg Engineers LLP, Schuman Lichtenstein Claman Efron Architects, Central Synagogue, and Amtex Electrical Corp., Third–Party Defendants.

Central Synagogue, Fourth–Party Plaintiff,

v.

ACCORDIA, INC. and Accordia, Inc., d/b/a Accordia Northeast, Fourth–Party Defendants.

No. 99 CIV. 0682(RWS).

United States District Court, S.D. New York.

May 9, 2001.

Cozen & O'Connor by Michael J. Sommi, Christopher C. Fallon, Jr., New York City, for Wausau Business Insurance Company.

Friedman Kaplan Seiler & Adelman, New York by Bruce S. Kaplan, Robert D. Kaplan, Andrew R. Greengrass, Central Synagogue, NY, for Plaintiffs.

Lester, Schwab, Katz & Dwyer by Seth I. Weinstein, New York City, for Defendant Amis Inc.

Palmeri & Gaven by John J. Palmeri, New York City, Torino & Bernstein, Mineola, NY, for Defendant Aris Development Corp.

Jones Hirsch Connors & Bull by Chris Christofides, James H. Rodgers, New York City, for Defendant/Third–Party Plaintiff.

Margolis Edelstein by Michael P. McKenna, Philadelphia, PA, McKeegan, McShane & Drago by George P. McKeegan, New York City, for Trident Mechanical Systems, Inc.,

Milber Makris Plousadis & Seiden, by Peter Seiden, White Plains, NY, for Schuman Lichtenstein Claman Efron.

Gogick, Byrne & O'Neill by Stephen P. Schreckinger, New York City, for Atkinson Koven Feinberg Engineers.

*OPINION*

SWEET, District Judge.

Defendant and third-party plaintiff Turner Construction Company, Inc. ("Turner") has moved for summary judgment (1) dismissing the complaint of Central Synagogue Sanctuary ("Central Synagogue" or the "Synagogue"); or, in the alternative (2) contractual indemnity from Central Synagogue for the negligence of any subcontractor, including third-party defendants Amis, Inc. ("Amis"), Aris Development Corporation ("Aris"), and any other contractor, architect, engineer or attorney; (3) for insurance coverage by Central Synagogue and Wausau Business Insurance Company ("Wausau") due to Central Synagogue's alleged breach of contract in failing to insure Turner; and (4) such other relief as the Court deems proper, including costs and fees associated with bringing this motion. Central Synagogue opposes the motion. For the reasons set forth below, the motion will be denied.

### Relevant Parties

Central Synagogue is a non-profit organization with offices at 123 East 55th Street, New York, New York.

Turner is a New York corporation with offices at 375 Hudson Street, New York, New York.

### Facts

The following facts are undisputed, although the parties dispute the proper interpretation of several key contractual provisions.

Turner entered into an agreement with Central Synagogue on or about January 26, 1998 for construction consultancy services in connection with renovations at the Central Synagogue Sanctuary located at 652 Lexington Avenue, New York, New York. The Construction Management Consulting Agreement (the "Agreement") conferred several dozen specific responsibilities on Turner, including the management of all contractors, "coordination of safety and protection procedures," conducting "daily inspection of the work under construction," and monitoring the proper and timely receipt of "all necessary governmental and regulatory permits." (Rodgers Aff. Ex. A, Arts. 1–3.) Turner agreed generally to "perform such services, and take such other acts, in a timely, professional, and good and workmanlike manner, using its best skill and judgment, as are customarily and reasonably required to be taken by a construction manager in connection with a project of the nature, size and scope of the work." (Rodgers Aff. Ex. A Rider ¶ 11 (# CS003576).)

Article 6 of the Agreement required Turner to purchase insurance to cover both itself and the Synagogue from workers' compensation and bodily injury claims. In addition, that provision provides that "the Owner [Central Synagogue] shall name the Construction Manger [sic] [Turner] an additional insured party or cause its Contractors to so name the Construction Manager an additional insured party on the Contractor's insurances." (Rodgers Aff. Ex. A, Art. 6.) In a rider to the Agreement, Turner undertook responsibility for ensuring that the agreements with the other contractors contained all necessary insurance provisions:

> Construction Manager shall consult with Owner and/or its insurance advisors with respect to insurance and bonding requirements for contractors, and shall cause such requirements to be included in the construction contracts when so directed by Owner.

(Rodgers Aff. Ex. A, Page B.)

In Article 7, the provision on the limitation of liability, the parties agreed that the obligations of all contractors ran directly

to Central Synagogue, and that Turner had not been employed as an architect, engineer, attorney or Contractor except as agreed to in writing. The next two paragraphs in Article 7 are most relevant to this motion, and their proper interpretation is hotly contested:

> Owner shall defend, indemnify and hold the Construction Manager harmless from claims arising out of the acts or omissions on the part of the architects, engineers, attorneys or contractors and shall cause its architects, engineers, attorneys and contractors to do likewise in a manner and form satisfactory to the Construction Manager.
>
> Notwithstanding the above, it is understood and agreed that the Construction Manager shall be liable to the Owner, its successors and assigns, and shall indemnify Owner against Loss, liability, damages, costs, and expenses, including reasonable attorney fees for any negligence or willful misconduct of construction Manger [sic] or its officers, agents or employees, in the performance of its Services and the failure to perform its obligations under the contract which results in any loss, claim, or injury to the Owner, its successors or assigns.

(Rodgers Aff. Ex. A, Art. 7.) A rider to the Agreement provides that Turner "agrees it shall look solely to the insurance coverage of Owner where Turner is named as an additional insured for amounts within the stated limit of said coverage." (*Id.* at Page B.) Finally, Article 8 provides that the contract shall be governed by New York law.

Various contractors and subcontractors contracted to assist in the renovation work, including defendants Amis (general contractor) and Aris (roofing subcontractor), third-party defendants Trident Mechanical Systems, Inc. ("Trident") (heating, ventilation, and air conditioning design and installation), Atkinson Koven Feinberg Engineers, LLP ("AKFE"), Schuman Lichtenstein Claman Efron Architects ("SLCE"), and Amtex Electrical Corp. ("Amtex").

The Amis Contract with Central Synagogue provides in relevant part that Amis "shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for safety precautions and programs in connection with the Work" and agreed that "neither Turner nor the Architect will be responsible therefor or have control or charge thereof." (Rodgers Aff. Ex. B, Art. IV.) Nor would Turner be responsible for the failure of Amis or any of its agents or subcontractors to carry out the work as per the directives in the contract documents. (*Id.*)

Notwithstanding the letter of the various contracts (and, in some cases, the New York City Fire Department's published rules), deposition testimony tends to establish that numerous necessary safety precautions were not taken. For instance, an active fire alarm panel was removed, and no temporary alarm panel was installed, leaving the Synagogue with no automatic fire alarm protection. (Greengrass Aff. Ex. 3 at 3.) No full-time Fireguard was present at the construction site. Compliance with the New York City Fire Department's published rules requiring that each torch operator hold a Certificate of Fitness, and that a particular quantity and distribution of fire extinguishers be at the location of any "hot work," were not monitored. (*Id.* at 2.) Exhaust fans were left running constantly for up to three days before the fire despite the lack of a fire alarm or other safety override device, which may have contributed to the rapid spread of the fire. (*Id.*) Finally, although a Stop–Work Order was issued to the roof-

er due to safety concerns on August 27, 1998, work continued the next day. (*Id.*)

On August 28, 1998, a fire ignited—allegedly from a propane torch operated by a roofer in the Northeast tower of the Synagogue—and destroyed the building. Plaintiff filed suit in the New York County Supreme Court on February 25, 1999, and that action was consolidated before this Court with other related third-party actions on June 28, 2000.

### Background

The prior proceedings in this action have been set forth in two prior opinions of this Court, familiarity with which is assumed. *See Central Synagogue v. Turner Const. Co.,* 141 F.Supp.2d 412 (S.D.N.Y.2001); *Central Synagogue v. Turner Const. Co.,* 64 F.Supp.2d 347 (S.D.N.Y.1999).

Turner filed the instant motion on April 23, 2001. In short, Turner argues that the Agreement dictates that Turner (1) may be held liable only for its own negligence or willful misconduct; (2) must be indemnified by Central Synagogue for the conduct of any other entity; (3) may not be held jointly and severally liable; and (4) is entitled to insurance coverage from Central Synagogue and/or the subcontractors. Central Synagogue and Wausau Business Insurance Company ("Wausau") opposed the motion in separate submissions, arguing in essence that because Turner was responsible for coordinating and managing the subcontractors, it therefore may be held negligent for failing to exercise reasonable care in overseeing the renovation work of the subcontractors, even if the subcontractors' own active negligence was a but-for cause of the fire. The motion was deemed fully submitted after oral argument on May 7, 2001.

Trial on the liability phase of this bifurcated trial is scheduled to begin at 2 p.m. on May 9, 2001.

### Discussion

#### I. Legal Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. *See* Fed.R.Civ.P. 56. A party seeking to defeat a summary judgment motion cannot " 'rely on mere speculation or conjecture as to the true nature of facts to overcome the motion.' " *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (citation omitted).

## II. *Summary Judgment for Contractual Indemnity from Central Synagogue is Denied*

New York law provides that "the initial interpretation of a contract 'is a matter of law for the court to decide.' " *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996) (*quoting Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir.1996)). Determining whether the terms of the contract are ambiguous is part of this initial interpretation. *See Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990); *Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988). "[I]f the contract is capable of only one reasonable interpretation, i.e., is unambiguous, [courts] are required to give effect to the contract as written." *K. Bell & Assoc.*, 97 F.3d at 637 (internal quotation marks omitted); *see also Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir.1996); *United Nat'l*

*Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 107 (2d Cir.1993).

The second and third paragraphs of the Agreement in this case are susceptible to only one meaning. Taken together, these clauses operate to ensure that Turner will be indemnified by Central Synagogue for the conduct of others *unless* Turner is negligent in the performance of its own duties, in which case Turner is obligated to indemnify Central Synagogue for losses arising therefrom. (Rodgers Aff. Ex. A, Art. 7.) This reading is both clear from the plain language of Article 7, and also comports with § 5–322 .1 of New York's General Obligations Law, which renders unenforceable any contract that purports to indemnify a party from liability for his own negligence.[1] The rationale behind § 5–322.1 is that "one engaged in building construction should not, as a matter of public policy, be permitted to contract for exoneration or indemnification from liability for injuries which he, in whole or in part, causes." *Chiarelli v. 128 Eighth Avenue Associates*, 152 Misc.2d 155, 574 N.Y.S.2d 921, 922 (N.Y.Sup.Ct. 1991).

Courts construing section 5–322.1 have uniformly determined that partial indemnification clauses such as the one in the Central Synagogue Consulting Agreement are valid, but insulate the indemnee from liability *only* to the extent that the indemnee is not itself negligent. *See, e.g., Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 786, 794–795 & n. 5,

1. That section provides:
    A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building ... purporting to indemnify or hold harmless the promisee against liability for damage ... contributed to, caused by or resulting from the negligence of the promisee ... whether such

    negligence be in whole or in part, is against public police and is void and unenforceable... This subdivision shall not preclude a promisee requiring indemnification for damages ... caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent.
    N.Y. G.O.L. § 5–322.1.

658 N.Y.S.2d 903, 680 N.E.2d 1200 (1997) ("... without a finding of negligence on the part of the general [contractor], the agreements as applied would not run afoul of the proscriptions of ... § 5-322.1."); *Vestal v. Yonkers Contracting Co. Inc.*, 268 A.D.2d 872, 873-74, 703 N.Y.S.2d 540, 542 (N.Y.App.Div.2000) ("... any future finding of active negligence by defendant ... might indeed prohibit the enforcement of the contractual indemnification clause pursuant to ... § 5-322.1."). In light of these cases, Turner is contractually entitled to indemnification from Central Synagogue only if Turner was not negligent in performing its own duties.

Turner argues that both its Agreement with Central Synagogue and with Amis unambiguously insulate Turner from liability for damages resulting from the conduct of other subcontractors, and, because the subcontractors were allegedly negligent, Turner is entitled to summary judgment for contractual indemnity.

In support of this argument, Turner cites this Court's decision in *Monaghan v. SZS 33 Associates, L.P.*, 875 F.Supp. 1037 (S.D.N.Y.1995), where a similar clause was enforced to indemnify a joint tortfeasor except for its own negligence. However, the contract in *Monaghan* clearly followed the common law rule for proportional contribution among joint tortfeasors, whereas Turner construes this Agreement as abrogating that rule despite the lack of an unmistakable intention to do so. Moreover, *Monaghan* involved a dispute between two defendants regarding the apportionment of their liability to a third party victim who fell on the defendants' stairway, while the indemnity clause in this case is between the injured plaintiff and the defendant tortfeasor. In short, the circumstances of *Monaghan* are distinguishable, and therefore its indemnity holding is not applicable to this case.

Moreover, Turner overlooks the fact that its contractual obligation was to oversee the subcontractors' renovations in the ways enumerated in the Agreement. Turner was charged with, *inter alia*, the management of all the contractors, "coordination of safety and protection procedures," conducting "daily inspection of the work under construction," and monitoring the proper and timely receipt of "all necessary governmental and regulatory permits." (Rodgers Aff. Ex. A, Arts. 1-3.) As such, Turner could itself be negligent for failing to correct safety lapses on the part of the subcontractors. *See, e.g., Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 859 F.2d 242, 247-48 (2d Cir.1988) (citing New York cases finding project managers with supervisory obligations over subcontractors liable for negligence); *Kenny v. George A. Fuller Co.*, 87 A.D.2d 183, 189, 450 N.Y.S.2d 551, 555 (N.Y.App. Div.1982) (noting, in context of New York Labor Law's provision for contractor liability, "[l]egislative purpose of placing absolute liability upon the party or parties responsible for co-ordinating and supervising the entire construction project."); *Carollo v. Tishman Constr. & Research Co.*, 109 Misc.2d 506, 440 N.Y.S.2d 437, (N.Y.Sup.Ct.1981) (finding passively negligent construction manager liable for active negligence of subcontractor because contract gave construction manager the penumbral obligation to coordinate the subcontractors and ensure the safety of the work site).

Given Turner's supervisory relationship to the subcontractors, the provision in the Amis contract indemnifying Turner for Amis's safety lapses in effect purports to indemnify Turner for its own negligence, and is therefore unenforceable pursuant to General Obligations Law § 5-322.1. *See Harvey v. Mazal American Partners*, 165 A.D.2d 242, 251, 566 N.Y.S.2d 242, 247

(N.Y.App.Div.1991) (general construction manager contractually charged with supervising overall project safety whose employee negligently failed to prevent or observe subcontractor's laying of unsecured plank was liable for resulting injury pursuant to G.O.L. § 5–322.1 despite indemnification clause), *aff'd as modified,* 79 N.Y.2d 218, 590 N.E.2d 224, 581 N.Y.S.2d 639 (N.Y. 1992).

■ The expert report submitted by Central Synagogue in opposition to this motion opines that, as the project coordinator, Turner acted or neglected to act in several ways that directly contributed to the fire. In particular, after reviewing voluminous deposition testimony and discovery materials, Alan D. Chasan, R.A. ("Chasan") notes that Turner and its employees failed to:

- take necessary measures to double-check all life-or-property-threatening activities such as "hot work";

- monitor the contractors' compliance with the NYC Fire Department's published rules including, among others, rules regarding "hot work" on an alteration project;

- monitor the contractors to assure that the work was being done safely, for example by failing to investigate why the roofers were working on the roof the following day after Amis sent a Stop–Work Order to the roofing subcontractor due to safety concerns;

- monitor any or all of the contractor's safety programs;

- exercise prudent professional project management and showed an irresponsible and cavalier attitude toward safety—for instance by instructing the mechanical contractor to connect the attic space exhaust fans although no protective override system was in place; and

- call the fire department promptly when the roof caught fire, but instead instructed an Amis employee to "call his office."

(Greengrass Aff. Ex. 3 at 2–3.) This expert summary of the evidence to date creates a genuine issue of fact as to whether Turner exercised reasonable care in carrying out its supervisory responsibilities. Whether Turner was responsible for acts that led to the fire will clearly "affect the outcome of the suit," and therefore the answer to this question is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A determination of Turner's contractual right to indemnity from Central Synagogue is therefore premature, and will depend on the jury's determination of whether Turner was negligent. *See Potter v. M.A. Bongiovanni, Inc.,* 271 A.D.2d 918, 919, 707 N.Y.S.2d 689 (N.Y.App.Div.2000) (denying summary judgment under agreement indemnifying general contractor for acts of subcontractor where it had not yet been determined whether general contractor was also negligent); *American Ref–Fuel Co. v. Resource Recycling, Inc.,* 248 A.D.2d 420, 671 N.Y.S.2d 93, 96 (N.Y.App. Div.1998) ("Although the instant subcontract contained a provision requiring Universal to defend and indemnify the plaintiff, no proof was offered by the plaintiff as to its freedom from fault so as to entitle it to summary judgment on a claim for contractual indemnification.").

If the jury finds that Turner was negligent, the indemnity provision in the second paragraph of Article 7 of the Agreement will be invalid, and Turner will be required to indemnify Central Synagogue as per the third paragraph of Article 7. If the jury finds that Turner was not negligent, then the Synagogue will be required to indemnify Turner for liability pursuant to Article 7's second paragraph.

### III. *Turner is Not Relieved from Joint and Several Liability*

■ New York law is clear that where the negligence of several actors causes a single divisible injury, each negligent actor is jointly and severally liable for the damages, and the victim may collect the full amount from any one of them. *See Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987); *Mazyck v. Long Island Railroad Co.,* 896 F.Supp. 1330, 1333 (E.D.N.Y.1995) ("The law is clear that where there is but one indivisible injury caused by the joint or concurrent acts of two or more tortfeasors, each tortfeasor is jointly and severally liable for the entire amount of damages."). Damage sustained as a result of fire started by more than one cause is a quintessential example of an indivisible injury suited to joint and several liability. *See Rozark Farms, Inc. v. Ozark Border Elec. Coop.,* 849 F.2d 306, 311 (8th Cir.1988) ("Loss as a result of fire has traditionally been classified as a type of damage not reasonably capable of apportionment between more than one cause."); Restatement (Second) of Torts § 433 A, cmt. i (1977) ("Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division. Death is that kind of harm ... The same is true of ... the destruction of a house by fire....")

As set forth above, the nonmovants have raised a substantial question as to whether Turner failed to exercise reasonable care, and whether such lapse caused the damage to the Synagogue, in combination with the alleged negligence of other subcontractors/third-party defendants.

Nonetheless, Turner argues that it contracted out of joint and several liability when it agreed to abide by the indemnification clause in Article 7 of the Agreement that limited its liability to that caused by its own willful misconduct or negligence rather than the conduct of others.

■ Both Turner and Central Synagogue are sophisticated parties acting through counsel. The Agreement is comprehensive, enumerating the parties' relative rights, responsibilities, and compensation in a five-page document plus riders. Although the Agreement clearly sets forth the ways in which liability is to be limited and apportioned between the parties in various scenarios, it includes no explicit abrogation of the otherwise applicable rule of joint and several liability. As a rule, indemnification clauses must be "strictly construed to avoid reading into [them] a duty which the parties did not intend to be assumed." *Hooper Assoc., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903 (1989); *see also Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). Under these circumstances, it would be improper to infer language limiting the imposition of joint and several liability. *See Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 421 N.E.2d 818, 823, 439 N.Y.S.2d 326, 331 (N.Y.1981) ("Where language has been chosen containing no inherent ambiguity or uncertainty, courts are properly hesitant, under the guise of judicial construction, to imply additional requirements to relieve a party from asserted disadvantage flowing from the terms actually used.").

Summary judgment relieving Turner of joint and several liability is therefore denied.

### IV. *Summary Judgment for Insurance Coverage from Central Synagogue Is Denied*

■ Turner next seeks summary judgment for insurance coverage from Central Synagogue on the theory that the Synagogue breached the Agreement in failing

to procure insurance for Turner. However, the relevant provision in the Agreement reads in the alternative:

Owner shall name the Construction Manger [sic] an additional insured party *or* cause its Contractors to so name the Construction Manager an additional insured party on the Contractors' insurances.

(Rodgers Aff. Ex. A, Art. 6) (emphasis added.) This clause is unambiguous, with the plain meaning that Central Synagogue undertook a mandatory obligation to insure Turner ("Owner shall...") that could be satisfied in one of two ways: by naming Turner on Central Synagogue's policy, or, in the alternative, by the subcontractors naming Turner as insureds on their policies pursuant to subsequently drafted contracts. A rider to the Agreement makes clear that Turner elected to pursue the latter option rather than the former. (Rodgers Aff. Ex. A, Rider at B, ¶ 4A.) Turner does not dispute that each of the subcontractors named it on their insurance policies, except for Trident, whose insurer, Kemper Insurance Company ("Kemper"), is a named defendant in a related declaratory judgment action Turner has filed before this Court. *See Turner Construction Co. v. Kemper Insurance Co.*, No. 01 Civ. 2899(RWS). However, Turner's complaint in the *Kemper* action alleges that Trident's policy with Kemper "included Turner as an additional insured...." (Rodgers Aff. Ex. E at 5 ¶ 10.)

Therefore, the undisputed facts, including Article 6 and the Rider to the Agreement, as well as the subcontracts and insurance certificates submitted in connection with this motion, demonstrate that Turner exercised its insurance option in favor of coverage by the subcontractors rather than by Central Synagogue. Regardless of whether Trident followed through on this obligation, the Synagogue is not contractually required to provide insurance coverage for Turner. The motion for summary judgment must be denied.

## V. *Summary Judgment to Relieve Turner of Wausau's Subrogation Claim is Denied*

New York law provides that "an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *Pennsylvania Gen. Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 468, 502 N.E.2d 982, 983, 510 N.Y.S.2d 67, 68 (1986). As the motion for summary judgment dismissing Wausau's subrogation claim is dependant on a finding that Central Synagogue was contractually obligated to insure Turner, that aspect of the motion is also hereby denied.

### *Conclusion*

For the foregoing reasons, Turner's motion for summary judgment is, in all regards, denied.

It is so ordered.