[905 NE2d 1159, 878 NYS2d 230]

LARRY SHULMAN, Respondent, v JAMES HUNDERFUND, Appellant, et al., Defendant.

Argued February 11, 2009; decided March 26, 2009

144

**POINTS OF COUNSEL**

*Devitt Spellman Barrett, LLP,* Smithtown (*Diane K. Farrell* of counsel), and *Meyer, Suozzi, English & Klein, P.C.,* Garden City (*A. Thomas Levin* and *Michael A. Ciaffa* of counsel), for appellant. I. The Appellate Division failed to undertake the required independent review to determine whether the content of the flyer was constitutionally protected as nonactionable opinion, or whether the public official plaintiff established with convincing clarity that defendant acted with actual malice. (*New York Times Co. v Sullivan,* 376 US 254; *Bose Corp. v Consumers Union of United States, Inc.,* 466 US 485; *Mahoney v Adirondack Publ. Co.,* 71 NY2d 31; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235; *Milkovich v Lorain Journal Co.,* 497 US 1; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 434 US 969; *Mann v Abel,* 10 NY3d 271; *Brian v Richardson,* 87 NY2d 46; *Gross v New York Times Co.,* 82 NY2d 146; *Prozeralik v Capital Cities Communications,* 82

NY2d 466.) II. A campaign flyer statement that Larry Shulman, a candidate for public office, "BROKE THE LAW" was an expression of nonactionable opinion which may not be the subject of a private defamation action. (*New York Times Co. v Sullivan,* 376 US 254; *Steinhilber v Alphonse,* 68 NY2d 283; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369; *Gertz v Robert Welch, Inc.,* 418 US 323; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235; *Mann v Abel,* 10 NY3d 271; *Brian v Richardson,* 87 NY2d 46; *Gross v New York Times Co.,* 82 NY2d 146; *600 W. 115th St. Corp. v Von Gutfeld,* 80 NY2d 130; *Greenbelt Cooperative Publishing Assn., Inc. v Bresler,* 398 US 6.) III. An independent review of the factual record does not establish actual malice with convincing clarity. (*New York Times Co. v Sullivan,* 376 US 254; *Prozeralik v Capital Cities Communications,* 82 NY2d 466; *Bose Corp. v Consumers Union of United States, Inc.,* 466 US 485; *Gertz v Robert Welch, Inc.,* 418 US 323; *St. Amant v Thompson,* 390 US 727; *Harte-Hanks Communications, Inc. v Connaughton,* 491 US 657; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369; *Mahoney v Adirondack Publ. Co.,* 71 NY2d 31; *Masson v New Yorker Magazine, Inc.,* 501 US 496; *Greenbelt Cooperative Publishing Assn., Inc. v Bresler,* 398 US 6.)

*Smith Mazure Director Wilkins Young & Yagerman, P.C.,* New York City (*Mark S. Yagerman* and *Joel M. Simon* of counsel), for respondent. I. The Appellate Division's review was appropriate and its determination was rendered pursuant to the proper standard. (*Gross v New York Times Co.,* 82 NY2d 146; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369; *Prozeralik v Capital Cities Communications,* 82 NY2d 466; *Harte-Hanks Communications, Inc. v Connaughton,* 491 US 657; *Silsdorf v Levine,* 59 NY2d 8; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235.) II. Even if this Court gives credence to appellant's argument regarding the scope of review that was rendered by the Appellate Division, a review of the full record establishes constitutional malice and defamation per se. (*Immuno AG. v Moor-Jankowski,* 77 NY2d 235; *Brian v Richardson,* 87 NY2d 46; *Clark v Schuylerville Cent. School Dist.,* 24 AD3d 1162; *Guerrero v Carva,* 10 AD3d 105; *Brach v Congregation Yetev Lev D'Satmar,* 265 AD2d 360; *Mann v Abel,* 10 NY3d 271; *Di Bernardo v Tonawanda Publ. Corp.,* 117 AD2d 1009; *Silsdorf v Levine,* 59 NY2d 8; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369.)

SMITH, J.

In this action for libel by a public figure, the record does not clearly and convincingly show that the statements in question were made with "actual malice," as required by *New York Times Co. v Sullivan* (376 US 254 [1964]). We therefore hold that plaintiff's complaint against defendant James Hunderfund must be dismissed.

## I

In May of 1999, plaintiff, Larry Shulman, a member of the Commack Board of Education, was a candidate for reelection. Hunderfund, the school superintendent, believed that Shulman wanted him fired and was opposed to his candidacy. On the eve of the election, Hunderfund participated with others in preparing and circulating an anonymous flyer attacking Shulman. The flyer made several accusations, said to be the result of "[a]n investigation of Mr. Shulman's record" by "Concerned Citizens of Commack." Only the first of the accusations is now at issue. In a paragraph bearing the caption **"BROKE THE LAW,"** the flyer said:

> "Shulman flagrantly **broke the law** when he awarded a lucrative food service contract to one of his business associates. Concerned Citizens has verified the fact that Shulman NEVER revealed his business relationship with the food service company PRIOR to the awarding of this contract. Shulman's disregard of ethical principles and conflict of interest laws has cost the District dearly."

After losing the election, Shulman sued Hunderfund and another defendant for libel. The jury found for the codefendant, but awarded $100,000 in punitive damages against Hunderfund. Supreme Court set aside the verdict for Shulman and entered judgment in Hunderfund's favor; the Appellate Division reversed and ordered that judgment be entered in accordance with the verdict (*Shulman v Hunderfund*, 48 AD3d 449 [2d Dept 2008]). We granted leave to appeal (10 NY3d 713 [2008]), and now reverse the Appellate Division's order and reinstate so much of Supreme Court's judgment as dismissed the complaint against Hunderfund.

## II

Hunderfund argues that the statement that "Shulman flagrantly broke the law" is a statement of opinion, and

therefore not actionable (*see e.g. Steinhilber v Alphonse*, 68 NY2d 283 [1986]). Shulman maintains that the statement was presented as one of fact, noting that the flyer purported to be the result of a careful investigation. We find it unnecessary to resolve this issue. Even assuming that the statement is one of fact, it cannot, under the circumstances of this case, support a recovery for libel.

It is undisputed that Shulman, a public official running for reelection, was a public figure and that this case is governed by the rule of *New York Times Co. v Sullivan*, which interpreted the First Amendment to the United States Constitution as embodying "the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials" (376 US at 270). The Constitution, as interpreted in the *New York Times* case, bars Shulman "from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not" (*id.* at 279-280; *see also Mahoney v Adirondack Publ. Co.*, 71 NY2d 31, 35-36 [1987]). Actual malice must be proved by "clear and convincing evidence" (*Bose Corp. v Consumers Union of United States, Inc.*, 466 US 485, 511 n 30 [1984]; *see also Freeman v Johnston*, 84 NY2d 52, 56-57 [1994]).

■ Here, the jury found that Hunderfund's statement was made with actual malice. The Appellate Division upheld the verdict on the ground that it was supported by "legally sufficient evidence in the record" (48 AD3d at 450). The Appellate Division, however, applied the wrong standard. The usual deference paid by courts to jury verdicts is inapplicable in cases subject to the *New York Times Co. v Sullivan* rule. The *New York Times* Court said:

> "In cases where [the] line [between protected and unprotected speech] must be drawn, the rule is that we examine for ourselves the statements in issue and the circumstances under which they were made to see whether they are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect. We must make an independent examination of the whole record, so as to assure ourselves

that the judgment does not constitute a forbidden intrusion on the field of free expression." (376 US at 285 [citations, internal quotation marks and ellipsis omitted].)

Therefore, in a case like this we are not limited, as we ordinarily are, to a review of legal issues (*Mahoney*, 71 NY2d at 39). "[W]e must scrutinize the evidence of actual malice for 'convincing clarity' " (*Prozeralik v Capital Cities Communications*, 82 NY2d 466, 475 [1993] [citations omitted]). We find no such clarity here. The record does not convincingly show that Hunderfund knew the statements in issue to be false or that he made them with reckless disregard of whether they were false.

## III

The incident on which Hunderfund's accusation that Shulman "broke the law" was based occurred on July 2, 1998, some 10 months before the school board election. On that date, the school board decided to award a food service contract to a company called Whitsons—a contract that eventually went into default, and thus proved costly to the district. Shulman, as a board member, argued vigorously in favor of the award to Whitsons, and succeeded in persuading his colleagues on the board to reverse a previous, unfavorable vote.

Shulman had a communications support business, and Whitsons was a customer of that business—a "small" one, according to Shulman's uncontradicted testimony. Shulman did not mention the relationship to his colleagues at the July 2 meeting because, he testified, it simply did not occur to him. It did occur to him a few days later, however, and he called the lawyer for the school board, Eugene Barnosky, to ask if the relationship was a problem. At the next meeting, on July 14, Shulman disclosed his relationship to the board, and Barnosky advised the board that the relationship did not render the vote illegal.

That assurance did not satisfy everyone. Hunderfund—who, as school superintendent, was present at school board meetings—testified that, having heard Barnosky's opinion, he consulted his own lawyer, and got a "different" opinion. Also, the president of the board (who had been recused from the vote because his wife worked for a competing bidder) raised objections at the July 14 meeting and again at an August 20 meeting; and the competing bidder submitted a letter to the August 20 meeting, complaining that "one Board member" had a "direct or indirect" financial interest with Whitsons, which had not been disclosed. A copy of the letter was sent to Hunderfund.

The July and August discussions of Shulman's alleged conflict occurred at executive sessions of the Board. The subject was again discussed, this time at a public meeting, on September 18. At the September meeting, Barnosky defended Shulman's conduct. It is unclear from Barnosky's trial testimony, however, whether he did so unequivocally. Initially, Barnosky answered "yes" to a question from Shulman's lawyer: "You advised the Board and the public in September of 1998 that there was no evidence of any wrongdoing by Mr. Shulman, correct?" Later, however, Barnosky explained that by "wrongdoing" he meant "bid rigging, fraud, influence[ ] peddling or anything like that."

Barnosky also testified that he had said at the September meeting that Shulman had complied with the standard of disclosure imposed by the General Municipal Law. But when asked if the same standard applied under the Commack Board of Education Code of Ethics, Barnosky replied: "No, I think the standard there is broader." The gist of Barnosky's testimony is that his September 18 statement to the public meeting did not exclude the possibility that Shulman had committed an Ethics Code violation.

Whatever its tenor, Barnosky's statement did not end the controversy. The president of the board and another member continued to assert during the months preceding the May 1999 school board elections that Shulman's nondisclosure violated, or raised serious questions under, the Code of Ethics, and Hunderfund knew of those assertions.

The claim that Shulman had violated the Ethics Code was a debatable one, but it was not obviously untenable. A distinction can be drawn, as Barnosky suggested in his testimony, between the Code of Ethics and the General Municipal Law. General Municipal Law § 801 says that no municipal officer "shall have an interest" (defined in General Municipal Law § 800 [3] as "a direct or indirect pecuniary or material benefit") "in any contract with the municipality." The Code of Ethics requires a member to disclose "any direct or indirect financial or other private interest he/she has" in any "matter before the Board of Education." Though the requirements are similar, it could be argued that Shulman's business relationship with Whitsons, while not a "direct or indirect" interest in the contract between Whitsons and the school board, was an "other private interest" in the "matter."

We do not need to decide the meaning of either the General Municipal Law or the Code of Ethics. It is entirely possible that

Shulman violated neither of them. But we cannot say it is proved, by clear and convincing evidence, that Hunderfund knew Shulman's conduct to be lawful. That was a question on which Barnosky's advice left some room for doubt—and, in any event, Hunderfund, who had his own lawyer, and who heard and read views that seemed less favorable to Shulman than Barnosky's, did not have to take that advice as gospel.

Because the record does not clearly and convincingly show that Hunderfund knew Shulman to be innocent, or that he had no basis for thinking him guilty, of any legal transgression, Shulman's case must fail. If Shulman (in Hunderfund's mind) did violate the law in connection with the Whitsons transaction, then the paragraph challenged in this lawsuit was (in Hunderfund's mind) substantially true.

Concededly, Hunderfund could not have believed every word in the statement "Shulman flagrantly broke the law when he awarded a lucrative food service contract to one of his business associates" to be literally true. The adverb "flagrantly" was no doubt a rhetorical extravagance; and Shulman did not award the Whitsons contract himself—he persuaded his fellow board members to do so, and joined with them in doing it. Also, there may be a distinction (though there is no evidence Hunderfund was conscious of it) between the Commack Code of Ethics and "the law." But these details are unimportant to this case. The Constitution, which protects "vehement, caustic, and sometimes unpleasantly sharp attacks" in a political context, does not insist on complete verbal precision.

In this, the Constitution follows the common law of libel which, as the United States Supreme Court has observed, "overlooks minor inaccuracies and concentrates upon substantial truth" (*Masson v New Yorker Magazine, Inc.*, 501 US 496, 516 [1991]). In *Masson*, the Supreme Court defined "actual malice" in accordance with this "historical understanding" of libel law, which "would absolve a defendant even if she cannot 'justify every word of the alleged defamatory matter' " (*id.* at 516-517, quoting 5 Witkin, Summary of California Law § 495 [9th ed 1988]). It is understandable, of course, that Shulman did not like Hunderfund's provocatively phrased, and anonymous, charges against him. But so long as Hunderfund did not substantially depart from what he believed to be the truth, the only remedy for Shulman—and for other public figures similarly situated—is, as Supreme Court said in its order setting aside the verdict in this case, to develop a thicker skin.

Accordingly, the order of the Appellate Division should be reversed, with costs, and so much of the judgment of Supreme Court as dismissed the complaint against defendant Hunderfund reinstated.

Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order reversed, with costs, and complaint against defendant Hunderfund dismissed.