Zappin v. NYP Holdings Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT
# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of April, two thousand nineteen.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge,*
> JOHN M. WALKER, JR.,
> JOSÉ A. CABRANES,
> *Circuit Judges.*

---

Anthony Zappin,

    *Plaintiff-Appellant*,

    v.                                                                                           18-647

NYP Holdings Inc., DBA New York Post,
Julia Marsh,

    *Defendants-Appellees,*

Matthew F. Cooper, a Justice of the Supreme Court
of the State of New York, in his individual and personal
capacity,
    *Defendant*.

---

FOR PLAINTIFF-APPELLANT:      Anthony Zappin, pro se, Huntington, WV.

FOR DEFENDANTS-APPELLEES:      Robert D. Balin, Eric J. Feder, Davis Wright Tremaine, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Anthony Zappin, pro se, sued the *New York Post* (the "*Post*") and its reporter, Julia Marsh, for defamation. He alleged that the *Post* published an article about a day of court proceedings in his divorce and child custody case that falsely accused him of abusing his ex-wife. The district court dismissed the complaint, reasoning that the *Post* article was privileged as it was a fair and true report of Zappin's custody hearing and that collateral estoppel barred Zappin from challenging the truth of the abuse allegations. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept as true all the factual allegations in the complaint, that requirement is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

**I.    Application of New York Civil Rights Law Section 7 to the *Post* Article**

The district court properly concluded that New York Civil Rights Law § 74 applies to reports of matrimonial proceedings. In New York, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, . . . or for any heading of the report which is a fair and true headnote of the statement

2

published." N.Y. Civ. Rights Law § 74. Zappin argues that this privilege does not apply to reports of matrimonial proceedings.

In *Shiles v. News Syndicate Co.*, 27 N.Y.2d 9 (1970), the New York Court of Appeals considered whether § 74 applies to news articles concerning the plaintiff's divorce proceedings. The relevant articles in that case were based on papers filed in the proceeding, that were sealed court records under New York Domestic Relations Law § 235(1).[1] 27 N.Y.2d at 13. The Court of Appeals concluded that the § 74 privilege did not apply to reports based on "*records of proceedings in an action for divorce or separation.*" *Id.* at 18–19 (emphasis added). While the *Shiles* court did not directly address whether this ruling also applied to reports based on a reporter's observation of open court proceedings in matrimonial cases, the decision suggests that it does not. The Court of Appeals noted that "situations where the public have the right of access to proceedings in open court" are distinguishable from situations where state law prohibits the public from inspecting certain court records. *Id.* at 18 (internal quotation marks omitted). And although the New York Domestic Relations Law seals records of matrimonial proceedings, it does not permit the matrimonial court to restrict the public's access to the courtroom proceedings unless the "public interest requires that the examination of witnesses . . . not be public." N.Y. Dom. Rel. Law § 235(2). Only then may a matrimonial court exclude the public from the courtroom. *Id.*

Zappin did not allege that the *Post* article was based on sealed court records. Rather, he alleged that Marsh was present in the courtroom on November 12, 2015, implying that the proceedings were open to the public and members of the press. In fact, the matrimonial judge noted that the public was present during the testimony of a court-appointed forensic psychiatrist,

---

[1] New York Domestic Relations Law § 235(1) seals copies of "the pleadings, affidavits, findings of fact, conclusions of law, judgment of dissolution, written agreement of separation or memorandum thereof, or testimony" and prohibits anyone but the parties to examine them, except by court order.

3

Dr. Alan Ravitz, including Marsh and another journalist.   Given that the reporters were permitted to attend the court hearing and the matrimonial judge did not ban the public from the courtroom, *Shiles* does not bar the defendants from asserting a privilege under § 74.

II.       **"Fair and True" Report**

The district court properly concluded that the *Post* article was a "fair and true" report of the November 12, 2015 custody trial.   "For a report to be characterized as 'fair and true' within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate."   *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (1979).   "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth."   *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (internal quotation marks omitted) (applying New York law).   Some "liberality" is permissible, *Holy Spirit Ass'n*, 49 N.Y. at 68, and "minor inaccuracies" do not render an otherwise substantially true article defamatory, *Shulman v. Hunderfund*, 12 N.Y.3d 143, 150 (2009) (internal quotation marks omitted).   In addition, statements that are "pure opinion" are protected by the First Amendment and are not actionable as defamation.   *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986).

The *Post* article was substantially accurate.   First, the article's recitation of the allegations of Zappin's estranged wife, Claire Comfort—i.e., that Zappin was abusive, had planned to break into a neighbor's house, and had planned to create a fake Ashley Madison account—were attributed to Dr. Ravitz.   During his testimony, Ravitz stated that Comfort had told him that Zappin abused her.   Further, Comfort's attorney read portions of Ravitz's report aloud in open court, which included Comfort's allegations that Zappin hit her while she was 39 weeks pregnant, was planning

4

to make an Ashley Madison account to send to his former boss's wife and steal cable from the neighbor, and the attorney asked Ravitz questions about those allegations. Therefore, the article's summary of these allegations attributed to Ravitz was substantially accurate.

Next, Zappin complains about the article's statement that Ravitz called him "controlling and coercive." Record on Appeal ("RoA") doc. 22-1 at 2 In his testimony, Ravitz stated that Zappin's text messages to Comfort were "consistent with a pattern of coercive control" and had concluded that "there was a pattern of domestic violence of the coercive, controlling type." RoA doc. 30-1 at 120, 135. Zappin argues that Ravitz was not qualified to call him controlling or coercive because he was not an expert in domestic violence. Such an argument is meritless. Although Ravitz acknowledged that he was not an expert in domestic violence, he did state that he was an expert in psychiatry and could "look at patterns of allegations." *Id.* at 22. The article's summary of Ravitz's "controlling and coercive" comments was accurate.

The article also accurately summarized Ravitz's statement that the psychological evaluations "found that Zappin was 'narcissistic, obsessive-compulsive and histrionic.'" RoA doc. 22-1 at 2. This sentence mirrors Ravitz's testimony summarizing the psychological tests. Zappin argues that Ravitz was not qualified to make this assessment because he could not have performed the psychological tests. But the article correctly stated that Ravitz was testifying about the results of the exam, which were performed by a qualified psychologist and Ravitz included the results of the tests in his report and testified about them. The article therefore accurately summarized Ravitz's statements about Zappin's psychological test results.

Zappin argues that the district court erred by failing to consider that the *Post* article reported on only one day of court proceedings in a multi-day trial and therefore could not be a substantially accurate report. But Zappin cites no New York case supporting his argument. And to the extent

he means to argue that further reports on the trial would have vindicated him and shown that the allegations were untrue, he is precluded from arguing that the abuse allegations were untrue as discussed *infra*.

Zappin also argues that the article omitted the fact that, contrary to Comfort's allegations and the *Post*'s recounting, it was Comfort who had suggested a plot to break into a neighbor's home and steal cable, and that, by not including his objections to Comfort's allegations, the article implied that he had "actually engaged in the alleged conduct." Appellant Br. 21. There is "no requirement that the publication report the plaintiff's side of the controversy." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009); *see also Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620 (2d Dep't 1994) ("[T]he accuracy of the report was not altered merely because the article did not contain the plaintiff's 'side of the Judge's decision' . . . [or the fact] that the plaintiff appealed . . . ."). But given that Zappin was also accused of beating Comfort while pregnant, any implication that he also steals cable is of little consequence. *See Karedes*, 423 F.3d at 119 (reports are "substantially accurate" when they do "not produce a different effect on a reader than would a report containing the precise truth"). In any event, the article included that Zappin denied any abuse and his allegation that Comfort was actually violent. Therefore, the article's omission of Zappin's denial of that specific allegation does not render the article an inaccurate portrayal of the November 12, 2015, proceedings.

Zappin argues that the article's assertion that he was fired from Quinn Emanuel was false and therefore made the article inaccurate. But "minor inaccuracies" do not render an otherwise substantially true article defamatory. *Shulman*, 12 N.Y.3d at 150 (internal quotation marks omitted). Although Zappin is correct that the record did not show that he was not "fired" from Quinn Emanuel, during the hearing, there was mention that Zappin had left that firm and that he had

6

later been fired by a different law firm, Mintz Levin. This small error—confusing from which firm Zappin had been fired—does not substantially undermine the article's overall accuracy.

### III. Collateral Estoppel

Finally, Zappin challenges the district court's conclusion that he was collaterally estopped from challenging the truth of Comfort's allegations because the matrimonial judge's decision had been affirmed on appeal. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York collateral estoppel law to New York state court judgments. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005). In New York, "issue preclusion occurs if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 2004) (internal quotation marks omitted). "[C]ollateral estoppel [may] be invoked, either defensively or offensively[,] by a nonparty to the prior litigation[.]" *Buechel v. Bain*, 97 N.Y.2d 295, 315–16 (2001).

Zappin's claim challenging the truth of the abuse allegations is barred by collateral estoppel. First, the abuse issue was actually litigated in the matrimonial proceeding. The matrimonial court had to decide whether Zappin had been abusive in order to resolve the custody issues between him and Comfort; the matrimonial court awarded Comfort sole custody because Zappin had been abusive. *Zappin v. Comfort*, 155 A.D.3d 497, 498 (1st Dep't 2017) (affirming sole custody decision based on factual finding that Zappin "committed acts of domestic violence" against Comfort "both during her pregnancy . . . and after the child was born" by "physically and verbally harm[ing]" her); *see Halyalkar v. Bd. of Regents*, 72 N.Y.2d 261, 268 (1988) ("For a question to have been actually litigated . . . , it must have been properly raised by the pleadings or otherwise

7

placed in issue and actually determined in the prior proceeding."); *Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 458–59 (2d Dep't 1983) (holding that an issue was necessarily decided where a decision on that issue was required to reach a verdict and a contrary decision in subsequent litigation would contradict that verdict).

Further, Zappin had a full and fair opportunity to litigate. "[A] determination whether a full and fair hearing was provided requires consideration of the realities of the [prior] litigation." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000) (quoting *New York v. Sokol*. 113 F.3d 303, 307 (2d Cir. 1997)) (alternations in original). "Factors to be considered include, *inter alia*: 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding)." *Id.* Although Zappin represented himself pro se, he did have an attorney with him for portions of the custody trial. Further, Zappin vigorously litigated the domestic abuse issue.

Zappin argues that he lacked a full and fair opportunity to litigate because the matrimonial judge was biased against him. But Zappin offers no evidence supporting this argument, and simply because a judge rejects an argument or rules against a party does not mean they are biased. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (an adverse ruling is not evidence of bias). The fact that the judge issued a sanctions decision earlier in the case is not evidence of bias because the sanctions decision discussed only Zappin's conduct in litigation, not the underlying issues of the custody case, and mentioned the abuse allegations only in passing. *See Zappin v. Comfort*, 49 Misc. 3d 1201(A) (N.Y. Sup. Ct. 2015) (imposing sanctions on Zappin). Finally, Zappin argues that the matrimonial judge disseminated a sanctions decision to the media and threatened Zappin with a physical confrontation, but does not point to anything in the record supporting these claims.

8

*See Buechel*, 97 N.Y.2d at 304 ("The party to be precluded from relitigating the issue bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination."). Given that Zappin had a full and fair opportunity to litigate the domestic violence issues, the Appellate Division's decision affirming the custody award is entitled to preclusive effect on the issue of whether Zappin was abusive.

We have reviewed the remainder of Zappin's arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court